**JULIUS GARFINCKEL & CO., Incorporated (Successor to Brooks Brothers, Inc., formerly The A. DePinna Company), Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 346, Docket 28644.

United States Court of Appeals
Second Circuit.

Argued April 16, 1964.

Decided July 14, 1964.

Wallace S. Jones, New York City (Richard R. Dailey, John A. Corry), New York City, for appellant.

Gilbert E. Andrews, Jr., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys. Dept. of Justice, Washington, D. C.), for appellee.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

This petition to review a decision of the Tax Court denying a net operating loss carry-over under § 122 of the Internal Revenue Code of 1939 requires us to decide a difficult question as to the effect of Libson Shops Inc. v. Koehler,

353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), which we were able to avoid last term in Norden-Ketay Corp. v. C. I. R., 319 F.2d 902 (2 Cir.), cert. denied, 375 U.S. 953, 84 S.Ct. 444, 11 L.Ed.2d 313 (1963). The question, in substance, is this: When a corporation which has incurred losses but is still actively engaged in business acquires by consolidation another corporation with a history of profits in a similar business, does § 122 permit the consolidated corporation to deduct pre-consolidation losses from post-consolidation profits derived solely from operations of the acquired corporation—this in a context in which a single stockholder owned 58% of the common stock of the loss corporation and 100% of the common stock of the profit corporation during the period of the losses and, by virtue of the consolidation, owned 95% of the stock of the surviving corporation? With some hesitation, we have concluded that Libson requires a negative answer.

In 1946 and 1947 petitioner Julius Garfinckel & Co., Incorporated, acquired all the stock of Brooks Brothers, a New York corporation long engaged in the retail selling and manufacturing of men's wear. Another New York corporation, likewise engaged in selling clothing, both men's and women's, at retail, the A. De-Pinna Company, had an outstanding capital stock of 164,902 shares of common and 37,549 shares of preferred, each convertible into two shares of common. In January, 1950, Garfinckel acquired from DePinna's management 91,869 shares of common and an option on 22,879 shares of convertible preferred, which it exercised December 5, 1952; by an offer to other common stockholders it secured additional common shares, bringing its total to 97,087.76.

On February 6, 1952, the directors of Brooks Brothers, wholly owned by Garfinckel, and of DePinna, controlled by it, adopted resolutions whereby, pursuant to § 86 of the New York Stock Corporation Law, McKinney's Consol.Laws, c. 59, the two companies would be consolidated into DePinna, whose name was to be changed to Brooks Brothers, Inc. The 60,870 common shares of Brooks Brothers would become 1,217,400 shares of common stock of the consolidated corporation; the common and preferred stocks of DePinna would remain unchanged. The consolidation became effective on February 29, 1952. The Commissioner does not dispute the existence of substantial business reasons for the transaction. The corporation maintained separate records for the Brooks Brothers and DePinna divisions as well as for "Unallocated 'Headquarters' Expenses."

DePinna, which had previously made its income tax returns on the basis of a fiscal year ending January 31, changed to a July 31 fiscal year in 1950. Its returns for the five months ending July 31, 1950, showed a net operating loss of $208,903.27; the 1951 return showed such a loss of $310,851.66; and the return for the year ended July 31, 1952, which included five months of the consolidated operation, showed a net operating loss of $71,087.01. Brooks Brothers had been reporting on the basis of a July 31 fiscal year and filed a final return for the period ending February 29, 1952. In its first report covering a full year's operation, the consolidated corporation, Brooks Brothers, Inc., né DePinna, deducted $586,687.78, the sum of the net operating losses detailed above with a few minor adjustments. The following schedule shows the results by divisions for the fiscal years 1952, 1953 and 1954:

| Year | Total | Brooks Brothers Division | DePinna Division | Unallocated "Headquarters" Expenses |
|------|-------|--------------------------|------------------|--------------------------------------|
| 7/31/52 | ($ 71,087.01) | $ 296,727.31 | ($325,626.82) | ($ 42,187.50) |
| 7/31/53 | 638,837.75 | 1,020,382.58 | ( 275,211.50) | ( 106,333.33) |
| 7/31/54 | 774,270.60 | 1,145,258.27 | ( 262,605.73) | ( 108,381.94) |

We assume that the "Brooks Brothers" and "Unallocated 'Headquarters' Expenses" figures for 1952 are for five months only and that the $71,087.01 loss for that fiscal year is thus a hybrid obtained by netting a year of DePinna losses with five months of Brooks Brothers profits, but Garfinckel has not urged that any special considerations apply to it. The Commissioner disallowed the carry-over on the basis of Libson Shops and the Tax Court sustained him. In 1957 the consolidated corporation was merged into Garfinckel, which became liable for the deficiency in contest and hence is the petitioner here.

Section 122(b) (2) (B) of the 1939 Code says that "If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the five succeeding taxable years * * *." If we could limit ourselves to the words of the statute, petitioner would prevail. "The taxpayer," to wit, DePinna, the surviving corporation, had net operating losses for 1950, 1951 and 1952, and the statute says these may be carried over to 1953.

Against this attractive simplicity the Commissioner raises the formidable barrier of Libson Shops. Garfinckel says the case is not dispositive. We agree that the case was different and did not require a decision that would govern the problem here presented; but, on consideration of the broad ground adopted by the Supreme Court, we have been unable to convince ourselves of the existence of a principled basis for reaching a different result.

The "taxpayer" in Libson Shops was a Missouri corporation previously engaged solely in the management of sixteen retail stores, each separately incorporated either in Missouri or in Illinois. All seventeen corporations were owned by the same persons in the same proportions. By merger, the management corporation acquired the sixteen retailing corpora-

tions, of which one Missouri corporation and two Illinois corporations had incurred net operating losses and continued to lose after the merger. The Supreme Court would not allow the surviving corporation to deduct the pre-merger losses of these three operating companies. Garfinckel argues that Libson Shops determined only that losses cannot "cross the line of corporate fusion" for carry-over purposes unless the profits whence they are to be deducted come from the same business as incurred the losses; the Tax Court, it contends, has misconstrued that decision in depriving a corporation of the right to deduct its own pre-consolidation losses from post-consolidation profits because the latter came from the business acquired.

As indicated, we agree that Libson Shops could have been decided on a basis that would not control the issue here presented. Furthermore the Libson Shops opinion itself casts some doubts on the scope of the decision by what was to become a celebrated footnote, 353 U.S. at 390, 77 S.Ct. at 994:

"⁹ We do not pass on situations like those presented in Northway Securities Co. v. Commissioner, 23 B.T.A. 532; Alprosa Watch Corp. v. Commissioner, 11 T.C. 240; A. B. & Container Corp. v. Commissioner, 14 T.C. 842; WAGE, Inc. v. Commissioner, 19 T.C. 249. In these cases a *single* corporate taxpayer changed the character of its business and the taxable income of one of its enterprises was reduced by the deductions or credits of another."

The cited cases, other than Northway Securities, are by no means so wide of the mark as the Commissioner argues. WAGE, Inc. dealt with a problem essentially similar to that before us; and while there may be distinctions with respect to Alprosa Watch and A. B. & Container, these were in one respect stronger cases for the Commissioner since in them there had been a complete change not only of business but also of

stock ownership between the loss and profit years.[1]

However, it is not enough for Garfinckel to show that its case is different from Libson Shops or even that the Supreme Court expressly left the instant issue open. It must show that the difference is relevant to the reasoning on which the Court based its decision and thus is sufficiently significant that we could reasonably anticipate that the Court would wish us to decide differently. Here is where Garfinckel's argument fails. Although the Supreme Court *could* have decided Libson Shops on the basis that the "taxpayer" seeking the deduction was not that which had incurred the losses, it deliberately—indeed, as we would gather, somewhat unexpectedly—placed decision on a ground that strips the distinction asserted by Garfinckel of dispositive significance.

Certiorari was sought in Libson Shops on the basis that the decision of the Eighth Circuit, 229 F.2d 220 (1956), refusing to permit a merged corporation to deduct losses previously incurred by merging corporations was in conflict with this Court's decision in Stanton Brewery, Inc. v. C. I. R., 176 F.2d 573 (1949), Judge L. Hand dissenting, and the Ninth Circuit's in E. & J. Gallo Winery v. C. I. R., 227 F.2d 699 (1955), which had allowed excess profits tax credits of a predecessor corporation to "cross the line of corporate fusion" to the successor in a statutory merger. The whole of petitioner's brief on the merits in Libson Shops and the bulk of the Government's were devoted to discussing whether the surviving corporation was the same taxable entity, in a legal sense, as the three operating companies that had sustained the losses—the Government arguing that there should be no distinction between an acquisition by merger and a take-over of assets and liabilities for stock, which had been ruled insufficient for a loss carry-over in New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934), and that the Stanton case, regarded as the source of Gallo Winery and two decisions subsequent to that under review, Koppers Co. v. United States, 134 F.Supp. 290, 133 Ct.Cl. 22 (1955), cert. denied, 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed.2d 1142 (1957), and Newmarket Mfg. Co. v. United States, 233 F.2d 493 (1 Cir. 1956), cert. denied, 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed.2d 1142 (1957), if not distinguishable, had been wrongly decided. Only in the final pages of its brief did the Government advance the argument that "Even if regarded as the same taxable entity as its predecessors, taxpayer is not entitled to the claimed operating loss deduction since its business was not the same." This argument, barely touched on in the taxpayer's reply brief, was what the Court adopted, 353 U.S. at 386, 77 S.Ct. 990. Apparently impatient of metaphysical discussions respecting the limits of corporate life, the Court decided that, for the purposes of § 122, economics rather than legal niceties should prevail. The Court found no indication in the legislative history of the loss carry-over provisions that they "were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business." 353 U.S. at 386–387, 77 S.Ct. at 993. The three operating corporations, which continued to lose after the merger, could not have used the loss carry-overs if they had stayed separate. Since the purpose of the carry-over provision was "not to give a merged taxpayer a tax advantage over others who have not merged," the Court concluded "that petitioner is not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses."

1. The Commissioner acquiesced in Northway, X-2 Cum.Bull. 52 (1931); in A. B. & Container Corp., 1950–2 Cum.Bull. 1, and in WAGE, Inc., 1954–2 Cum.Bull. 6, but withdrew all these three years after Libson Shops, 1960–2 Cum.Bull. 8.

The Supreme Court's express disclaimer of interest in whether the surviving entity was the same "taxpayer" as that which had incurred the losses, and its reliance instead on whether the losses were produced by the same "business" as produced the post-merger profits from which it is sought to deduct them, obliterates Garfinckel's attemped distinction of its case based on the survivorship of the loss corporation. We find no reason to think the Supreme Court would have decided Libson Shops differently if the fourteen profit-making corporations had been merged into the three losing corporations and these had survived.

The years have indeed revealed that the test of a continuing "business" entity creates at least as many problems as the more arbitrary but more certain one that had preceded it—in addition to the basic incongruity of forcing a merged corporation, during the period of a potential loss carry-over, to keep asunder what the merger was supposed to have joined, with the accounting problems that may attend upon this.[2] These problems are considerably more acute when, in contrast to the Libson Shops situation of a profit company acquiring a loss company, where § 129 of the 1939 Code alone will often carry the day for the Commissioner, a loss company for valid business reasons acquires a profit company. The purpose of the carry-over and carry-back provisions "to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year," 353 U.S. at 386, 77 S.Ct. at 993, demands that a corporation that has failed in one line

of activity and then has succeeded in another should be able to set off the results of the bad years against those of the good. Once that is posited, it becomes hard to draw an intelligible line between a case where a corporation has provided itself with assets to establish a new business and another where it has bought a business already established. The Commissioner recognized this in Rev. Rul. 63–40, 1963–1 Cum.Bull. 46, announcing that the Service would not rely on the rationale of Libson Shops in cases where, without significant changes in stock ownership, a loss corporation purchased for cash the business of a non-related corporation, although reiterating his non-acquiescence, see 1963–1 Cum.Bull. 5, in Kolker Bros. Inc. v. C. I. R., 35 T.C. 299 (1960), in which the Tax Court declined to apply Libson Shops where the purchase of the new business was partly financed by funds borrowed from outsiders who shortly exchanged the debt for 46% of the stock of the acquiring corporation It is easy to think of a series of cases of the acquisition of profitable businesses by previously losing ones, ranging from the instances expressly dealt with in the cited Ruling, through cash purchases from a related corporation, purchases for notes or preferred stock—unconvertible or convertible—from corporations unrelated or related, cases like Kolker Bros., acquisitions of assets by the issuance of common stock small or large in proportion to that already outstanding, transactions like the one in this case, and the "shell" corporation cases cited below. We would indeed be hard put to devise a formula that would determine just where in this

2. See Sinrich, Libson Shops—An Argument against Its Application under the 1954 Code, 13 Tax L.Rev. 167, 174 (1958). In Rev.Rul. 59–395, 1959–2 Cum.Bull. 475, 479, the Commissioner took the position that any carry-over deduction following merger or consolidation is disallowed under the 1939 Code unless the records of the resulting corporation are so maintained as to enable the IRS to make a reasonably conclusive determination what part of the profits of the merged corporation is attributable to the assets which incurred the pre-merger losses. A recent decision of the Tax Court supports this. See Allied Central Stores, Inc. v. CIR, T. C. Memo. 1964–45, CCH Tax Ct.Mem. ¶ 26,668(M).

We note for clarity that our opinion in this case does not touch the question of the role of Libson Shops under the 1954 Code.

spectrum the Libson Shops line would fall. We can make only the unilluminating statement that in a transaction in which a 58% owner of a loss corporation causes it to acquire a wholly owned profit corporation, with a consequent increase in its ownership of the survivor to 95%, the discontinuity between the before and the after seems sufficient to cause the case to be attracted by Libson Shops. If we have misunderstood that opinion, we would be even more than usually willing to be corrected, since there is much appeal in Garfinckel's 58% ownership of DePinna during the years of the losses, although the Commissioner counters that in Libson Shops there was complete identity in stock ownership before and after merger.

Both parties rely on the many decisions applying Libson Shops to disallow loss carry-overs under § 122 where new stockholders have poured profitable assets into a loss corporation that had abandoned or nearly abandoned its business. C. I. R. v. Virginia Metal Products, Inc., 290 F.2d 675 (3 Cir.), cert. denied, 368 U.S. 889, 82 S.Ct. 140, 7 L.Ed.2d 88 (1961); J. G. Dudley Co. v. C. I. R., 298 F.2d 750 (4 Cir. 1962); Mill Ridge Coal Co. v. Patterson, 264 F.2d 713 (5 Cir.), cert. denied, 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959); Willingham v. United States, 289 F.2d 283 (5 Cir.), cert. denied, 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 31 (1961); Norden-Ketay Corp. v. C. I. R., 319 F.2d 902 (2 Cir.), cert. denied, 375 U.S. 953, 84 S.Ct. 444, 11 L.Ed.2d 313 (1963); Huyler's v. C. I. R., 327 F.2d 767 (7 Cir. 1964). Garfinckel stresses the emphasis placed by these opinions on the "shell" character of the corporation and on the complete or nearly complete discontinuity in stock ownership. But this was simply the normal practice of a court's deciding an easier case on a satisfying basis that was readily available rather than unnecessarily wrestling with a more difficult one; we can give testimony on this with respect to Norden-Ketay. The lesson that the Commissioner draws from these cases is more to the point, namely, that Libson Shops is not rendered inapplicable by the fact that the surviving corporation which seeks the deduction is the same corporation that incurred the losses.

Affirmed.