FIELDCREST MILLS, INC. v. J. HOWARD COBLE, SECRETARY OF REVENUE FOR THE STATE OF NORTH CAROLINA

No. 67

(Filed 1 September 1976)

1. Taxation § 29— merger of corporations — loss carryover — continuity of business enterprise

The continuity of business enterprise test formulated in *Libson Shops, Inc. v. Koehler,* 353 U.S. 382 (1957), and adopted by the N. C. Supreme Court in *Distributors v. Shaw, Comr. of Revenue,* 247 N.C.

Fieldcrest Mills v. Coble, Sec. of Revenue

157 (1957), controls the availability of a loss carryover deduction to successor corporations under G.S. 105-130.8.

2. **Taxation § 29— merger of corporations — loss carryover — continuity of business enterprise**

The continuity of business enterprise test means that where a loss corporation and a gain corporation are merged, pre-merger losses may be offset against post-merger gains only to the extent that the business [or group of assets] which was previously operating at a loss is now operating at a profit.

3. **Taxation § 29— merger of parent and subsidiary — loss carryover of subsidiary — no continuity of business enterprise**

Where a wholly owned subsidiary performed a manufacturing service required by the parent corporation in its own production and also conducted 40% of its business with others, the two corporations filed separate state income tax returns as required by state law and consolidated returns as permitted by federal law, the subsidiary experienced net operating losses for a couple of years and was thereafter merged into the parent in a tax-free re-organization, the parent subsequently conducted the same businesses the separate corporations had previously conducted, and following merger the division which had previously been the subsidiary continued to operate at a loss, there was no continuity of business enterprise so as to permit the parent to offset against post-merger profits attributable solely to its pre-merger assets the net operation loss deduction incurred by the former subsidiary prior to merger.

ON *certiorari* to review the decision of the Court of Appeals, reported in 23 N. C. App. 157, 208 S.E. 2d 394 (1974), which affirmed the judgment of *Winner S.J.*, at the 4 February 1974 Session of the Superior Court of ROCKINGHAM, docketed and argued as Case No. 19 at the Spring Term 1975.

Plaintiff, a Delaware corporation authorized to do business in North Carolina and having its residence and principal place of business in Rockingham County, brought this action under G.S. 105-267 for the refund of corporate income taxes paid by plaintiff for the year 1970. The facts were stipulated and are summarized below.

Plaintiff is a manufacturer of household textiles including bedding and bath products. Some of these products are printed with designs by utilizing a process called "screen printing." Foremost Screen Print, Inc. (Foremost) was organized by plaintiff as a Delaware corporation in 1962 for the principal purpose of screen printing textile products for plaintiff. In 1963 a plant was constructed for this purpose near Stokesdale, North

Carolina, and shortly thereafter operations of Foremost, which had previously been conducted in New Jersey were terminated.

When Foremost was organized, plaintiff owned all of the 1600 issued and outstanding shares of voting preferred stock and 400 of the 800 issued and outstanding shares of common stock of Foremost. On 10 March 1967 plaintiff acquired the additional 400 shares of common stock and, from that date until 31 December 1969, Foremost was a wholly owned subsidiary of plaintiff.

Throughout its corporate existence Foremost engaged solely in the process of "screen printing." During the year 1969, 63.4% of Foremost's receipts resulted from transactions between plaintiff and Foremost; the remainder came from screen printing for other customers. Certain management personnel of Foremost were employees of plaintiff during 1969, but plaintiff billed Foremost for their salaries on 31 December 1969. Foremost operated in one plant with 290 employees.

During the years preceding and including 1969, plaintiff and Foremost were calendar-year taxpayers and were members of an affiliated group of corporations which filed consolidated federal income tax returns.

In 1969, Foremost incurred a net economic loss of $485,164.00 as reported on its North Carolina income tax return for that year. The loss resulted solely from business transactions within North Carolina, and Foremost was not required to allocate and apportion the loss as provided in G.S. 105-130.4.

On 31 December 1969, through a statutory merger under Section 253, General Corporation Law of the State of Delaware, Foremost was merged with plaintiff. The merger was treated for federal income tax purposes as a nontaxable transaction under Section 332, Internal Revenue Code of 1954, which provides for the liquidation of a subsidiary into its parents. The total assets of Foremost received by plaintiff was $1,767,999.00, and the net value of these assets was $1,221,337.00. After the merger plaintiff continued the screen printing operations of Foremost at the same location, with the same equipment and employees, in the same manner and using the same accounting methods as prior to the merger. Plaintiff also continued to operate as it had before the merger.

During the year 1970, in its operation of the business formerly conducted by Foremost, plaintiff incurred an economic loss of approximately $302,000.00. Plaintiff, which continued to be a calendar-year taxpayer, claimed a deduction on its North Carolina income tax return for 1970 of $485,164.00. The deduction was taken under G.S. 105-130.8 for the net economic loss incurred in 1969 by Foremost.

In auditing plaintiff's 1970 return defendant disallowed plaintiff's claimed deduction, made a related adjustment of plaintiff's deduction for contributions to North Carolina donees, and assessed additional taxes against plaintiff in the amount of $27,654.35. Plaintiff filed objections and, at a hearing on 1 November 1972, the Commissioner of Revenue sustained the assessment.

Plaintiff paid defendant the additional taxes plus interest ($27,654.35 plus $3,180.25) in February 1973 and made a written demand for refund in March 1973. The tax was not refunded within 90 days and plaintiff filed suit for the assessed amount under G.S. 105-267.

Judge Winner heard the case on the facts stipulated above and sustained the Commissioner. He concluded that plaintiff was presently carrying on a business in which it had not engaged prior to the merger "and that therefore there was no continuity of business enterprise." Further, he concluded that "a different business entity is claiming the loss carryover than incurred the loss"; that plaintiff was not entitled to deduct the loss carryover of its subsidiary Foremost and therefore not entitled to recover the additional taxes assessed. The Court of Appeals affirmed the judgment of the Superior Court and, upon plaintiff's petition, we allowed certiorari.

*Womble, Carlyle, Sandridge & Rice by Leon L. Rice, Jr., and John L. W. Garrou for plaintiff appellant.*

*Rufus L. Edmisten, Attorney General, and George W. Boylan, Assistant Attorney General, for defendant appellee.*

SHARP, Chief Justice.

The facts of the present case can be reduced to the following formula. "A," a parent corporation, incorporates "B," a wholly owned subsidiary, to perform a vital manufacturing service required by "A" corporation in its own production. "B" not

only provides the service to "A" corporation, but 40% of its business is conducted with others. The two corporations operate as parent and subsidiary, filing separate state income tax returns as required by state law and consolidated income tax returns as permitted by federal law. After "B" experiences net operating losses for a couple of years it is merged into "A" corporation in a totally tax-free reorganization. Thereafter "A" corporation conducts the same businesses the separate corporations had previously conducted. In the year following the merger the division of "A" corporation, which was formerly "B" corporation, continued to operate at a loss. On "A's" post-merger federal income tax return, however, the pre-merger net operating loss attributable to "B" corporation is allowed as a carryover deduction under § 381 of the Internal Revenue Code (I.R.C.) of 1954 and is used to offset post-merger income generated by the previous assets of "A" corporation.

This appeal presents the question whether, under the present state corporate tax statutes (specifically, G.S. 105-130.8 (1972)), "A" corporation (Fieldcrest) can offset against post-merger profits attributable solely to its pre-merger assets the net operating loss deduction incurred by constituent corporation "B" (Foremost) prior to the merger. Resolution of this question requires us to construe and apply G.S. 105-130.8.

This provision is patterned after the net operating loss carryover deduction found in the 1939 federal Internal Revenue Code, and this Court in construing it has looked to and relied upon federal cases applying the analogous federal deduction. *Distributors v. Currie, Com'r. of Revenue*, 251 N.C. 120, 110 S.E. 2d 880 (1959); *Distributors v. Shaw, Com'r. of Revenue*, 247 N.C. 157, 100 S.E. 2d 334 (1957). Therefore, in order to comprehend the state deduction completely and to apply it properly, the history of net operating loss carryover deductions under the federal and state tax statutes, as well as the judicial decisions construing them, must be examined.

The net operating loss carryover deduction was first introduced into the I.R.C. in 1918, Revenue Act of 1918, ch. 18 § 204(b)—Comment, The Loss Carryover Deduction and Changes in Corporate Structure, 66 Colum. L. Rev. 338, 339 (1966)—in an effort to allow a taxpayer to average his income by balancing losses incurred in lean years against profits earned in lush ones. "The fundamental proposition underlying the car-

ryover concept is one of tax equity: a taxpayer with a given aggregate income over a period of years whose annual returns vary between profit and loss should not be required to bear a greater tax burden than another taxpayer with the same aggregate income who suffers no annual losses." Comment, 66 Colum. L. Rev. at 339. The deduction, however, had the potential of allowing easy tax avoidance when the taxpayer seeking to claim it was not the one who actually incurred the loss. For many years it was a common practice for a high-profit corporation to acquire, often very cheaply, a loss corporation with a huge accumulated net operating loss. The two corporations would merge, the non-profitable business would be terminated, and the surviving corporation would attempt to offset its income by deducting the net operating losses that were previously generated by the submerged loss-corporation. In order to prevent such abuses, the I.R.S. the courts, and ultimately Congress found it necessary to set rules and guidelines governing the availability of the deduction, particularly in the area of successor corporations.

To understand the judicial limitations, the language of the initial federal tax statutes allowing the deduction must be examined. "The operative portion of all the carryover sections prior to the 1954 Code used substantially the same phraseology. *See, e.g.,* Revenue Act of 1924, ch. 234, § 206(b), 43 Stat. 260 ('If, for any taxable year, it appears . . . that *any taxpayer* has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of *the taxpayer* for the succeeding taxable year.' [emphasis added]); Int. Rev. Code of 1939, § 122(b)(1) ('If for any taxable year . . . *the taxpayer* has a net operating loss . . . ' [emphasis added])." Comment, Net Operating Loss Carryovers and Corporate Adjustments, 69 Yale L.J. 1201, 1207 n. 22 (1960).

Because of this statutory language, the I.R.S. and judicial opinions had a tendency to focus on the identity of "the taxpayer" who incurred the loss and whether it was the same as "the taxpayer" who sought the deduction. The I.R.S. maintained that *the corporate entity,* rather than *its shareholders,* was the taxpayer within the meaning of the statute. It therefore allowed the deduction only if the corporation claiming it was operating under the same corporate charter as the corporation which experienced the loss. Conversely, "if the corporation which claimed the deduction was operating under a different charter from the

corporation which sustained the loss, the carryover was disallowed even though the shareholders and business remained as they were before the change in charter." Comment, 69 Yale L.J. at 1207. The U.S. Supreme Court adopted this "entity theory" in *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 78 L.Ed. 1348, 54 S.Ct. 788 (1934).

In *New Colonial* an existing corporation (Colonial Ice Co.) was experiencing financial difficulties. Pursuant to an agreement between the corporation's creditors and its shareholders a new corporation, New Colonial Ice Co., was formed. All of the assets of the existing corporation were transferred to New Colonial in return for its corporate shares. This stock was then transferred to the shareholders of the existing corporation in a share for share exchange for the outstanding stock of the old corporation. Thereafter New Colonial continued the same business and sought to deduct against its income net operating losses sustained by the older corporation. Although the shareholders of the two corporations remained the same and the same business was conducted, the U. S. Supreme Court denied the deduction on the basis that the corporate entity claiming the deduction was not the same corporate entity that had experienced the loss. In other words the "taxpayer" seeking the deduction was not the "taxpayer" that had incurred the loss. The Court expressly rejected the argument that since the shareholders of the two corporations remained the same, the two corporations should be considered the same entity for tax purposes. The Court noted, "As a general rule a corporation and its shareholders are deemed separate entities and this is true in respect of tax problems." 292 U.S. at 442, 78 L.Ed. at 1353, 54 S.Ct. at 791.

Although the "entity" doctrine espoused in *New Colonial* flourished, see Becker, Loss Carryovers and the *Libson Shops* Doctrine, 32 U. Chi. L. Rev. 508, 510 (1965), it was not equitable and did not comport with market reality. Under the doctrine the availablility of the deduction depended on the form of the transaction. Thus, if "A" corporation, operating at a profit, merged with "B," a loss corporation, and thereafter conducted its same business under the corporate charter of "A" or under a new corporate charter, the net operating loss deduction would be unavailable since the legal entity claiming the deduction would not be the same legal entity that generated the loss. How-

ever, if the same "A-B" merger took place and the business were conducted under the corporate charter of "B" the carryover would be allowed since the legal entity claiming the deduction also sustained the loss. This doctrine often led to easy tax avoidance and resulted in inequitable taxation. *See* Alprosa Watch Corp., 11 T.Ct. 240 (1948) ; 69 Yale L.J. at 1209-11.

To avoid its undesirable consequences lower federal courts sought to distinguish *New Colonial* and to allow the deduction and other tax attributes to survive, whenever there was a continuity of enterprise between the two merging corporations and the resulting corporation and where the merger was achieved pursuant to statute. *See Newmarket Mfg. Co. v. United States,* 233 F. 2d 493 (1st Cir. 1956), *cert. denied,* 353 U.S. 983 (1957) ; *Stanton Brewery, Inc. v. Commissioner,* 176 F. 2d 573 (2d Cir. 1949). *Compare Koppers Co. v. United States,* 133 Ct. Cl. 22, 134 F. Supp. 290 (1955), *cert. denied,* 353 U.S. 983 (1957). *See also* 66 Colum. L. Rev. 341-42, 69 Yale L.J. at 1207-16; 32 U. Chi. L. Rev. at 510-512; Levine & Petta, Libson Shops—A Study in Semantics, 36 Taxes 445 (1958). In most of these cases, however, the deduction would have clearly been available but for the merger. As the courts sought to avoid the impact of the entity doctrine, the case law became murky and confused. 32 U. Chi. L. Rev. at 512.

Finally, Congress responded and the 1954 revision of the Internal Revenue Code included specific provisions regulating the availability of net operating loss deductions to successor corporations. "Section 381 [of the 1954 I.R.C.] repudiated the entity doctrine insofar as it had been applied to bar transfer of loss carryovers in certain corporate reorganizations. The section provides that an acquired corporation's carryover, in addition to a number of other tax attributes, shall pass to the acquiring corporation in five specified tax-free acquisitions." 66 Colum. L. Rev. at 343-44. Basically Section 381 authorizes a carryover "when there has been: (1) a liquidation of a subsidiary, (2) a statutory merger or consolidation, (3) the acquisition by a corporation of substantially all the assets of another corporation in exchange solely for its voting stock; (4) a transfer of substantially all the assets of a corporation to a controlled corporation followed by liquidation of the transferor corporation, or (5) a mere change of the place of organization, identity or form of a corporation." *Id.* at 344, n. 33. Under present § 381 the allowance of the deduction depends upon the economic effects

of the reorganization rather than upon the form of the transaction. As a part of its effort to prevent unwarranted tax avoidance through the carryover deduction, however, Congress enacted § 382, which places objective limitations upon the availability of the loss carryovers permitted under § 381. *Id.* at 344. These objective criteria work to deny or limit the deduction where there has been a significant change in the ownership of the resulting corporation as compared with the ownership of the acquired corporation coupled with a change in the acquired corporation's business activity. *See Id.* at 344 and n. 35.

Obviously the 1954 I.R.C. sections did not apply to pre-1954 corporate reorganizations, and it was not until 1957 that the United States Supreme Court sought to clarify the availability of the net operating loss carryover deduction to successor corporations in corporate reorganizations governed by the 1939 Code.

In *Libson Shops, Inc. v. Koehler,* 353 U.S. 382, 1 L.Ed. 2d 924, 77 S.Ct. 990 (1957), 17 corporations were incorporated by the same promotors—16 of the corporations sold women's apparel at retail and one, Libson Shops, Inc., provided management services for the other sixteen. The stock in all 17 corporations was held by the same individuals in the same proportions. However, each of the retail corporations was operated separately and filed separate tax returns. In 1949 the sixteen retail corporations were merged pursuant to state law into the one management service corporation. Following the merger, Libson Shops, Inc., conducted the entire business of the sixteen retail corporations. "Thus, the effect of the merger was to convert 16 retail businesses and one managing agency, reporting their incomes separately, into a single enterprise filing one tax return." *Id.* at 383, 1 L.Ed. 2d at 926, 77 S.Ct. at 991. Three of the retail corporations had, prior to the merger, experienced net operating losses and after the merger, these same units of the consolidated corporation continued to sustain losses. In the year following the merger, Libson Shops, Inc., sought to deduct from its gross income the net operating loss sustained by the three constituent corporations prior to the merger. The applicable code provision authorizing the deduction, § 122(b) of the I.R.C. of 1939, read as follows: "If for any taxable year . . . the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years. . . . " The I.R.S., relying on the entity theory of *New*

Fieldcrest Mills v. Coble, Sec. of Revenue

*Colonial*, contended that the carryover deduction was unavailable because the "taxpayer" claiming it, Libson Shops, Inc., was not the same corporate entity as the "taxpayer" (the three constituent corporations) which had sustained the loss. The United States Supreme Court declined to base its decision on the entity doctrine. Nonetheless, adopting the Government's alternative argument, it denied the deduction. The Court said: "The Government contends that the carryover privilege is not available unless there is a continuity of business enterprise. It argues that the prior year's loss can be offset against the current year's income only to the extent that this income is derived from the operation of substantially the same business which produced the loss. Only to that extent is the same 'taxpayer' involved.

"The requirement of a continuity of business enterprise as applied to this case is in accord with the legislative history of the carry-over and carry-back provisions. Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years and to strike something like an average taxable income computed over a period longer than one year. There is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger." *Id*. at 386-87, 1 L.Ed. 2d at 927-28, 77 S.Ct. at 992-93.

The Court then distinguished *Libson Shops, Inc.*, where it said "several businesses" were involved, from *Newmarket Mfg. Co. v. U. S.*, 233 F. 2d 493 (1st Cir. 1956), a case involving a "single business." In this regard the Court said: "This difference is not merely a matter of form. In the *Newmarket* case, *supra*, a corporation desiring to change the state of its domicile caused the organization of a new corporation and merged into it. The new corporation sought to carry back its post-merger losses to the pre-merger income of the old corporation. But for the merger, the old corporation itself would have been entitled to a carry-back. In the present case, the 16 sales corporations, prior to the merger, chose to file separate income tax returns rather than to pool their income and losses by filing a consolidated return. Petitioner is attempting to carry over the pre-merger losses of three business units which continued to have losses after the merger. Had their been no merger, these busi-

nesses would have had no opportunity to carry over their losses. If petitioner is permitted to take a carry-over, the 16 sales businesses have acquired by merger an opportunity that they elected to forego when they chose not to file a consolidated return." Id. at 388, 1 L.Ed. 2d at 928-29, 77 S.Ct. at 994.

In conclusion, the Court reemphasized that the carry-over deduction was not intended to provide a windfall for merged corporations or to "give the merged taxpayer a tax advantage over others who have not merged." Thus, the deduction was not available to Libson Shops, Inc., since there was no continuity of business between it as a consolidated corporation and its pre-merger constituent parts. Libson Shops, Inc., was not "entitled to a carry-over since the income against which the offset [was] claimed was not produced by substantially the same businesses which incurred the losses." *Id.* at 390, 1 L.Ed. 2d 929, 77 S.Ct. at 994.

Since the *Libson* decision, the I.R.S., the federal courts, and tax commentators have struggled with the concept of "the continuity of business enterprise" and its meaning has been less than clear. Perhaps this confusion results from the fact that "there are at least three elements involved in the concept of 'continuity of business enterprise,' namely, corporate entity, assets, and ownership. *Libson Shops* denies a loss carryover if entity and assets are different from those producing the loss, even if ownership does not change." Reese, Reorganization Transfers and Survival of Tax Attributes, 16 Tax L. Rev. 207, 220, n. 59 (1961).

The I.R.S.'s response to the *Libson* decision came in Revenue Ruling 59-395, which applied to corporate mergers and acquisitions governed by the 1939 Code. The Ruling attempted to delineate the criteria for determining when one business is "substantially the same" as another. Basically, it provided that "[f]ollowing a statutory merger or consolidation, the net operating losses of an 'absorbed constituent' corporation [could] be carried forward to the extent that such losses offset income of the 'resultant' corporation attributable to *assets:* (1) acquired by it from the absorbed constituent, *and* (2) 'used in continuing the prefusion business of such absorbed constituent.' . . . The ruling also provides that where the merged or consolidated corporations had filed a consolidated return in the loss year *and* the resultant corporation 'conducts the same busi-

ness as previously operated by the constituent corporation,' carryovers are allowable 'on the same basis as if the group . . . represents, collectively, after the merger or consolidation, the same taxable enterprise as before that event." 69 Yale L.J. at 1219-20.

Not surprisingly, the lower federal courts generally construed the *Libson Shops* decision along the same lines as the I.R.S. did in Revenue Ruling 59-395. Although the courts were not completely consistent, a few general patterns can be discerned in their application of *Libson Shops*. Carryovers have been denied where there has been a change of assets, and stock ownership has also changed hands, Huyler's, Inc., 38 T.Ct. 773 (1962), *aff'd* 327 F. 2d 767 (7th Cir. 1964), and where commonly owned corporations doing business and filing taxes separately, merged and then sought the benefit of carry-over deductions against the resultant corporation's income which had not been generated by the loss corporation's assets. *See Frank IX and Sons Virginia Corp. v. Commissioner*, 375 F. 2d 867 (3rd Cir. 1967), *cert. denied* 389 U.S. 900 (1967). The carry-over deduction has been allowed, however, where a parent and its subsidiaries have previously filed consolidated or affiliated returns, and after merger have attempted to offset post-merger income of the resulting corporation with a pre-merger loss of the subsidiary. *See* Joseph Weidenhoff, Inc., 32 T.Ct. 1222 (1959). This accords with the principle that since there was, prior to the merger, a single tax enterprise because of the consolidated returns, the deduction is permissible.

The courts have consistently followed Revenue Ruling 59-395 when "A" and "B" corporations merge and the businesses of both are continued. In this situation the pre-merger losses of each constituent corporation may be offset against post-merger income of the resultant corporation only to the extent that the post-merger income is produced by the same business or assets of that particular submerged corporation. *See Allied Central Stores, Inc. v. Commissioner*, 339 F. 2d 503 (2d Cir. 1964), *cert. denied* 381 U.S. 903 (1965); *Julius Garfinckel & Co., Inc. v. Commissioner*, 335 F. 2d 744 (2d Cir. 1964), *cert. denied*, 379 U.S. 962 (1965). These decisions tend to concentrate on the principle that the deduction is not permissible when, but for the merger, it would be unavailable.

The *Libson Shops* case, of course, spawned numerous articles in Law Reviews and other legal publications as various com-

mentators struggled with the concept of continuity of business enterprise. At least three interpretations of the case emerged:

First, *"Libson* was commonly interpreted as enunciating a 'but for' test: the deduction was permitted if, but for the reorganization, the loss corporation would be able to utilize the deduction." 66 Colum. L. Rev. at 347. This "but for" approach stemmed from the Supreme Court's desire to prevent a merged corporation from gaining, through merger, a tax advantage over non-merged corporations. The "but for" approach seems, however, to be merely a restatement of the second interpretation of the *Libson* case. This second approach, which can be called the assets approach, construes the phrase "substantially the same business" as referring to the physical assets of the corporations involved. 16 Tax L. Rev. at 220. *See also* 69 Yale L.J. at 1219-26. Under this view the premerger losses generated by the physical assets of the acquired corporation may be used to offset the post-merger profits of the resulting corporation which are generated by those assets but such such losses may not be offset against the resulting corporation's post-merger profits attributable to the acquiring corporation's pre-merger physical assets. A third approach has been described in Levine & Petta, Libson Shops—A Study in Semantics, 36 Taxes 445, 447-48 (1958)—as follows: "In order to determine whether 'substantially the same business' is carried on . . . the starting point [should] be an examination of the busines of the predecessor which sustained the loss. This business should then be compared with the business of the successor corporation. If the business is the same, there is continuity; the successor is the same taxpayer as the predecessor, and the loss carries over. If the business is not substantially the same, there is no continuity; the successor is a different taxpayer, and the loss does not carryover.

    .    .    .    .

"The Court's decision in the light of the facts in *Libson* demonstrates that there can never be continuity of business where two separately chartered corporations each operate a separate business and thereafter amalgamate, because the two businesses of the amalgamated corporation are different from the single business of each of the pre-amalgamated corporations. The only time that there can be continuity is where one of the corporations carries on so little business activity that the amalgamated corporation would continue only one business."

Although *Libson Shops* interpreted and applied the net operating loss carryover deduction sections of the 1939 federal tax code, it has had a dramatic impact upon this Court's interpretation of the analogous state corporate tax statutes. To understand how and why this is so, the North Carolina experience with the net operating loss deduction must be examined.

The "net economic [operating] loss" deduction has been a part of the N. C. corporate tax statutes since 1943. (N. C. Sess. Laws, ch. 400, § 4, subsection (g) (4) (1943) ; N. C. Sess. Laws, ch. 708, § 4, subsection (i) (1945) ; N. C. Sess. Laws, ch. 1110 § 3 (1967).) Since 1945 the language of the N. C. statute authorizing the deduction has been very similar to § 122 (b) of the 1939 I.R.C. Thus present G.S. 105-130.8 enacted in 1967 provides in pertinent part:

"Net economic losses sustained by *a* corporation in any or all of the five preceding income years shall be allowed as a deduction *to such* corporation subject to the following limitations:

"(1) The purpose in allowing the deduction of a net economic loss of a prior year or years is that of granting some measure of relief *to the corporation* which has incurred economic misfortune or which is otherwise materially affected by strict adherence to the annual accounting rule in the determination of net income. The deduction herein specified does not authorize the carrying forward of any particular items or category of loss except to the extent that such loss or losses shall result in the impairment of the net economic situation of *the corporation* so as to result in a net economic loss as hereinafter defined." (Emphasis added.)

The statute currently speaks of the deduction as being available to *the corporation* which sustained the loss just as the I.R.C. of 1939 spoke of the deduction being available to *the taxpayer*. Until 1967 the statute made the deduction available to "taxpayers who have incurred economic misfortune. . . . " *See* Vol. 2D of the N. C. Gen. Stat. § 105-147 (9) (d) (1965). Thus, it is not surprising that in 1957, when this Court was first called upon to decide whether a loss incurred by one corporation would be available to a successor corporation, we sought to ascertain whether *the taxpayer* (or in current statutory terms, *the corporation)* which had sustained the loss was the same *taxpayer* (or *corporation)* as the one claiming the deduction.

This Court in *Distributors v. Shaw, Com'r. of Revenue,* 247 N.C. 157, 100 S.E. 2d 334 (1957) had to consider the following situation. Goodwill Distributors, Inc. (Northeast), Goodwill Distributors, Inc. (Northern) and Goodwill Distributors (Mid-Atlantic) all merged pursuant to state statute into one corporation, Goodwill Distributors, Inc. (Northern). Thereafter Northern sought to carry over a premerger net operating loss experienced by Mid-Atlantic to offset Northern's postmerger income. The Commissioner of Revenue disallowed the deduction. Northern paid the additional tax assessed under protest and sued for its recovery. The record did not reveal what businesses the three corporations carried on prior to the merger, nor did it indicate what business the emerging corporation conducted. Finally, the record did not reveal which group of assets had produced the post-merger income. On this record the Court reversed a judgment on the pleadings entered in plaintiff's favor. In doing so, it adopted the "continuity of business" rationale of Libson Shops. After reviewing federal cases that considered the question the Court said: "These cases emphasize the necessity of a continuing business of the kind and character by the corporation whose loss is claimed as a deduction from income earned by another." *Id.* at 161, 100 S.E. 2d at 336. The Court, quoting from *Libson Shops* indicated that the deduction was not intended to confer, upon a merged corporation, a tax benefit that would not have been available to it but for the merger. Thus, the case was remanded for a new trial since the record was not sufficient to show a continuity of business enterprise between Goodwill (Mid-Atlantic), the loss corporation, and Goodwill (Northern) the resulting corporation. (Companion cases involving other Goodwill Distributors corporations were decided in the same way and were filed the same day. *Distributors v. Shaw, Com'r. of Revenue,* 247 N.C. 163, 100 S.E. 2d 338 (1957); *Distributors v. Shaw, Com'r. of Revenue,* 247 N.C. 164, 100 S.E. 2d 338 (1957).)

*Distributors* came before this Court again in 1959, *Distributors v. Currie, Com'r. of Revenue,* 251 N.C. 120, 110 S.E. 2d 880. This time the parties had stipulated the relevant facts and the trial judge again entered judgment for plaintiff. The stipulated facts showed that prior to the merger all three corporations had been engaged in the distribution of books and Bibles and that, while each had its own territory, there was substantial overlap in the areas served by the corporations. After the

merger the same character of business was conducted in the same territories in which the constituent companies had operated prior to the merger. Also "there was a continuity of ownership and continuance of the same business after the merger in that the same owners or persons held the business in the same proportion after the merger as before. The succeeding business was a continuation without change of the merging businesses." *Id.* at 125, 110 S.E. 2d at 883. It was clear, however, that the taxpayer was attempting to offset post-merger income generated by the assets of Northern and Northeast with a pre-merger loss attributable to Mid-Atlantic. On these facts, this Court again relied on Libson Shops and found that there was no continuity of business and that *the* taxpayer claiming the deduction was not *the* taxpayer that had experienced the loss. The Court said:

"We take note here that the Court in the *Koehler* case [*Libson Shops, Inc. v. Koehler*] did not base its decision on the theory that plaintiff was not the 'same taxable entity' as those corporations which suffered the loss. [This is clearly a reference to the corporate entity doctrine of New Colonial.] It did not reject the separate entity theory in express terms, but chose to place the decision on other grounds. We do not reject that theory. There are situations in which justice may well require its application. But we adhere to the reasoning in the *Koehler* case as the basis for decision in the case before us.

.   .   .

"The decision in the *Koehler* case rests on a lack of 'continuity of business enterprise.' This expression has a definite and well defined meaning. There is a continuity of business enterprise when the income producing business has not been altered, enlarged or materially affected *by the merger*.

.   .   .

"The facts do not support the conclusion [that there was a continuity of enterprise in the present case.] It is true that the constituent corporations, before the merger, and the resulting corporation, after the merger, engaged in sales and distribution of Bibles, books and literature of the same type and kind, the resulting corporation conducted business in the same territory as had the three constituent corporations before the merger, the resulting corporation had the same stockholders as the constituent corporations before the merger and the stockholders

owned the stock in the same proportion as before. But this does not constitute 'continuity of business enterprise' according to the meaning of that term as applied in such cases.

"The facts in this case are analogous with those in the *Koehler* case. Before the merger the three corporations operated separate territories, though somewhat overlapping, made separate incomes and filed separate income tax returns. By virtue of the merger a larger and more expanded business came into being and included all of the former income producing businesses. There was no continuity of the business of either of the constituent corporations. By reason of the merger, a new and more extensive enterprise has emerged. This new enterprise did not suffer the loss and cannot claim a deduction therefor." *Id.* at 126-127, 110 S.E. 2d at 884-85.

The Court, in the course of its opinion, cited two federal court cases *(Newmarket Manufacturing Co. v. United States,* 233 F. 2d 492 (1st Cir. 1956) and *Cotton Mills v. Commissioner,* 61 F. 2d 291 (4th Cir. 1932)), as illustrating when there would be a continuity of business enterprise so that the carryover deduction would be available to the resulting corporation. In both these cases the acquiring corporations had little or no physical assets prior to the merger and conducted no substantial business activity. After the merger the resulting corporation's assets consisted almost totally of the assets of the acquired corporation and the resulting corporation's business enterprise was the same business as the acquired corporation had conducted premerger. In this context the resulting corporation was allowed to carryover the net operating loss deduction of the acquired corporation since there was a continuity of business enterprise between it and the acquired corporation. In other words, the acquired corporations' businesses which in these cases had produced the post-merger income had not been materially altered, enlarged or affected by the merger.

The Court of Appeals had to consider a similar problem in *Poultry Industries v. Clayton, Comr. of Revenue,* 9 N.C. App. 345, 176 S.E. 2d 367, *cert. denied,* 277 N.C. 351, 177 S.E. 2d 900 (1970). There Holly Farms, Inc., was formed to serve as the parent corporation of thirty-two wholly owned subsidiaries which dealt with various aspects of the poultry raising industry ranging from hatcheries to processing plants. The overall plan was to have a complete, vertically integrated corporation. Pur-

suant to this plan several mergers of the various wholly owned subsidiaries were effected. In the mergers the directors, officers, etc. of each subsidiary were all the same. The particular merger before the court was the merger of Lovette Poultry into Mocksville Feed in May 1964 and the merger of Davie Poultry into Mocksville Feed in November 1964. After the merger the three entities conducted the same business they had as before but under the corporate charter of Mocksville Feed. On its 1965 income tax return Mocksville Feed attempted to carry over pre-merger losses attributable to both Lovette and Davie Poultry to offset its combined post-merger income. The Commissioner disallowed the deduction, the taxpayer paid and brought a successful suit to recover the taxes paid. The Commissioner appealed and the Court of Appeals reversed the judgment, in an opinion by Parker, J., finding that there had been no continuity of business and thus the corporation (Mocksville) which was claiming the deduction was not the same corporation that experienced the loss. In reaching this conclusion the Court of Appeals relied on *Distributors* and *Libson*. The Court noted that prior to the merger Mocksville did not conduct the businesses carried on by Lovette and Davie but that Mocksville did conduct them after the merger. Also neither Lovette nor Davie conducted the businesses handled by Mocksville before the merger. Thus, as a result of the merger, the businesses of Lovette and Davie were altered and expanded. Therefore there was no continuity of business as that term was used in *Goodwill*. The Court rejected the argument that the deduction should be allowed since the mergers were a part of a vertical organization which was motivated by legitimate business reasons rather than by tax avoidance. The Court concluded by saying:

"We also note that while Congress changed [§ 122(b) of the I.R.C. of 1939, as interpreted in Libson Shops] by enactment of § 381 of the Internal Revenue Code of 1954, no similar amendment to the N. C. Revenue Act has been enacted by the North Carolina General Assembly. Five regular biennial sessions of the North Carolina General Assembly have occurred since Supreme Court rendered its decision in *Distributors v. Currie, supra*. The absence of any pertinent amendment for so long a period would indicate approval by the legislature of the Court's construction of its statute." *Id.* at 352, 176 S.E. 2d at 372.

[1] Undoubtedly the *Libson Shops — Distributors* doctrine still controls the availability of the carryover deduction to succes-

sor corporations under G.S. 105-130.8. (Indeed the parties do not contend otherwise.) Our General Assembly has clearly rejected the more liberal carryover provisions found in the 1954 I.R.C. In 1967 the General Assembly enacted comprehensive corporate income tax statutes separating the corporate income tax statutes from the individual income tax statutes for the first time. N. C. Sess. Laws, ch. 1110, § 3 (1967). That year, also for the first time, our corporate income tax statutes were keyed to the federal corporate income tax provisions. Thus, G.S. § 105-130.3 (Cum. Supp. 1975) presently provides: "Every corporation doing business in this State shall pay annually an income tax equivalent to six percent (6%) of its net income or the portion thereof allocated and apportioned to this State. The net income or net loss of such corporation shall be the same as 'taxable income' as defined in the Internal Revenue Code in effect on January 1, 1975, subject to the adjustments provided in G.S. 105-130.5." As an indication of the General Assembly's rejection of the 1954 I.R.C. carry-over provisions, G.S. 105-130.5 (Cum. Supp. 1975) provided when it was enacted in 1967, and currently provides, (1) that in determining a corporation's State net income there shall be *added* to the corporation's federal taxable income "the net operating loss deduction allowed by the Internal Revenue Code," G.S. § 105-130.5(a)(6); and (2) there shall be *subtracted* from the federal taxable income "losses in the nature of net economic losses sustained by the corporation in any or all of the five preceding years pursuant to the provisions of G.S. 105-130.8," G.S. § 105-130.5(b)(4).

The General Assembly in its comprehensive revision of the corporate income tax statutes, however, reenacted as G.S. 105-130.8, with only slight modification, the existing net operating loss deduction found in old G.S. § 105-147(9)(d).

[1]   The first *Distributor* case was decided in 1957. If the General Assembly had disapproved of this Court's adoption of the *Libson Shops* doctrine, it is inconceivable that they would not have registered their disapproval in the 1967 revision of the tax statutes. Indeed, the slight changes made suggest an adherence to the *Libson Shops* doctrine or even to the entity doctrine of *New Castle*. This is true because, prior to the 1967 revision, the carry-over deduction read in part as follows: "Losses in the nature of net economic losses sustained in any or all of the five preceding income years arising from business transactions or to capital or property . . . subject to the following limitations: 1.

The purpose in allowing the deduction of net economic loss of a prior year or years is that of granting some measure of relief to *taxpayers* who have incurred economic misfortune . . . and the deduction herein specified does not authorize the carrying forward of any particular items or category of loss except to the extent that such loss or losses shall result in the impairment of the net economic situation of the *taxpayer* such as to result in a net economic loss as hereinafter defined." (Emphasis added.) Vol. 2D of N. C. Gen. Stat. § 105-147(9)(d) (1965). As previously quoted, G.S. 105-130.8 presently provides: "Net economic losses *sustained by a corporation* in any or all of the five preceding income years shall be allowed as a deduction *to such corporation* subject to the following limitations: (1) The purpose in allowing the deduction of a net economic loss of a prior year or years is that of granting some measure of relief *to the corporation* which has incurred economic misfortune. . . . The deduction herein specified does not authorize the carrying forward of any particular items or category of loss except to the extent that such loss or losses shall result in the impairment of the net economic situation of *the corporation* so as to result in a net economic loss as hereinafter defined." (Emphasis added.) We do not believe that these changes in the wording amount to a rejection of the *Libson Shops* doctrine. If anything they suggest an even firmer insistence that *the corporation* claiming the deduction be *the corporation* that experienced the loss. Therefore, in determining whether these two corporations are the same we will continue to apply the continuity of business enterprise test formulated in *Libson Shops* and adopted by this Court in *Distributors*.

As indicated, both parties fully agree that the *Libson Shops* doctrine controls the availability of the carry-over deduction to a successor corporation under G.S. 105-130.8. The parties disagree, however, with regard to their interpretation of the doctrine and its application to the present case.

[2, 3]  In our view *Libson Shops* and *Distributors* adopted primarily what has been described as an assets test. Therefore the continuity of business test as applied by this Court comports substantially with the 1959 Federal Revenue Ruling. In other words, the continuity of business enterprise theory "means that where a loss corporation and a gain corporation are merged, pre-merger losses may be offset against post-merger gains only to the extent that the business [or group of assets] which was

previously operating at a loss is now operating at a profit. Furthermore, the business referred to in the sentence above does not mean the formal legal entity but rather the bundle of assets, which previously constituted the pre-merger business unit." *Foremost Dairies, Inc. v. Tomlinson,* 238 F. Supp. 258, 262 (M.D. Fla. 1963) *aff'd* 341 F. 2d 580 (5th Cir. 1965). Applying this test to the present case, it is clear that there was no continuity of business between Foremost and Fieldcrest. The pre-merger losses which gave rise to the attempted deduction here were generated by the assets of Foremost. After merger these assets produced no income but continued to be operated at a loss. Thus there was no post-merger income generated by the assets of Foremost or by the business known as Foremost against which the pre-merger Foremost losses could be offset.

As indicated, some tax commentators described *Libson Shops* as adopting a "but for" approach to the deduction. 66 Colum. L. Rev. 338 (1966). Others suggested ways of applying the continuity of business test. *See* 36 Taxes 445. In our view these various approaches are merely restatements of the assets approach and are not substantively different from one another. In other words, they are merely different shorthand statements referring to the same group of policy concerns. This is readily shown by applying these approaches to the present case.

For example if the "but for" interpretation of *Libson Shops* were applied there would still be no continuity of business in the present case, and plaintiff would not be entitled to the deduction. Had Foremost remained a separate corporation, it would not have been able to claim the deduction since it operated at a loss. But for the merger there would be no income against which to offset the loss. Therefore the deduction should be denied since *Libson Shops* and *Distributors* both stressed that the net operating loss carryover deduction should not be used to give merged corporations a tax advantage over non-merged entities. In other words, the *Libson-Distributors* doctrtine seeks to prevent the reaping of a tax "windfall" from the mere fact of a merger.

Similarly, if we employ the analysis found in Levine & Petta, Libson Shops—A Study in Semantics, 36 Taxes 445 (1958) it is again clear that the deduction is not permissible in the present case. If one compares the pre-merger assets and business of Foremost (the loss-corporation) with the post-

merger business and assets of the resulting corporation, it is clear that the business of Foremost was materially altered and enlarged by the merger. Therefore there is no continuity of business between Foremost and the resulting corporation. From this it follows that the corporation claiming the deduction was not the corporation which sustained the loss, and consequently, the deduction must be denied.

The employment of these various approaches and interpretations of the *Libson Shops* doctrine emphatically establishes that there is no continuity of business in the present case within the confines of that doctrine. Plaintiff, nonetheless, contends that the rule should be different where a parent and subsidiary who filed consolidated returns prior to merger have merged and seek to carry over the deduction. *Libson* (353 U.S. at 388, n. 7, 1 L.Ed. 2d at 928, 77 S.Ct. at 993), subsequent federal cases, and the 1959 Revenue Ruling all recognize this distinction and allow the deduction in such circumstances. This different treatment is grounded on the fact that prior to the merger, the parent and subsidiary are, because of the consolidated returns, one single taxable enterprise. Merger does not affect the singleness of the taxable enterprise and the corporations do not acquire through merger a tax advantage they would not otherwise have had. However, the fact that plaintiff here, prior to the merger, filed a consolidated federal tax return with Foremost does not affect the availability of the State tax deduction. In this State parent and subsidiary corporations must, unless otherwise directed, file separate returns (G.S. 105-130.14 (1972)). The corporate tax statutes strive hard to isolate and keep separate the incomes of the two corporations (G.S. 105-130.5 (a) (9) and (b) (2) (Cum. Supp. 1975) ; 105-130.6 (1972)). They are, for State tax purposes, separate corporations and separate taxable entities. Thus, there is no room for the contention that prior to merger they were but one single enterprise and that, therefore, the carry-over deduction should be allowed.

Plaintiff also contends that the parent corporation should always be allowed to carry over, after merger. its subsidiary's losses because, in real economic terms, the shareholders of the parent are, in effect, the owners of the subsidiary and the ones who incurred the economic misfortune. Reduced to its essentials, this argument is that the deduction should be allowed since there is a continuity of ownership prior to and after the merger. We do not find this argument a sufficient ground upon

which to distinguish *Libson* and *Distributors*. In both those cases there was complete continuity of ownership with all shareholders owning the same proportion of the resulting corporations as they did of the constituent. Despite this fact, the deductions were denied in both instances.

In conclusion we emphasize that this appeal does not involve questions of the economic wisdom or equitableness of the present carryover provision. It may very well be that the carryover provisions of the 1954 I.R.C. accord taxpayers fairer treatment and better comport with market realities. If they do, then it is for the General Assembly to decide whether they are desirable for this State and to enact them into law if they find that they are. It is this Court's function to interpret the tax laws, as all other statutes, in accordance with the legislative intent. In our view, to allow the deduction which plaintiff claims here would require us to overrule the *Distributors* cases. Such action would constitute, not judicial interpretation of G.S. 105-130.8 but rather, judicial enactment of the carry-over provisions of the 1954 I.R.C. This we are unwilling to do. The decision of the Court of Appeals is, therefore,

Affirmed.