HOLLY FARMS POULTRY INDUSTRIES, INC. v. I. L. CLAYTON,
COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA

No. 7022SC541

(Filed 16 September 1970)

1. Taxation § 28— allowance of income tax deductions — matter of grace

The allowance of a deduction in the computation of taxable income
is a privilege granted as a matter of grace.

2. Taxation §§ 28, 38— tax deduction — burden of proof

One claiming a tax deduction must bring himself within the statu-
tory provisions authorizing it, and in general the deduction may be
taken only by the taxpayer to whom it accrues.

3. Taxation § 29— income taxation — loss carry-over of merged corpora-
tion — continuity of business enterprise

A corporation resulting from a merger may not deduct from its
post-merger income the loss carry-over of one or more of its constituent
corporations unless there is a continuity of business enterprise—that
is, unless the income producing business has not been altered, enlarged
or materially affected by the merger.

4. Taxation § 29— loss carry-over of merged corporations — continuity
of business enterprise

There was no "continuity of business enterprise" where the net
worth of the surviving corporation into which two other corporations
were merged was increased substantially by each merger, and the
surviving corporation was transformed from a manufacturer of poultry
feeds into a combined manufacturing and feeding operation; conse-
quently, the surviving corporation is not entitled under G.S. 105-
147(9)d to carry over and deduct for North Carolina income tax
purposes the pre-merger net economic losses of the two submerged
corporations from the post-merger income earned by the combined
corporate businesses.

5. Taxation § 29— continuity of business enterprise after merger — verti-
cal or horizontal merger

In determining whether there is a "continuity of business enter-
prise" after a merger, it makes no difference that there was a "verti-
cal type" merger in which the several merged corporations were
doing jobs in one continuous chain of processing, rather than a "hori-
zontal type" in which each of the corporations was doing basically
the same job.

6. Taxation § 29— loss carry-over of merged corporation — merger not
for purpose of avoiding taxes

The fact that mergers were made in pursuance of an overall plan
to bring into being an "integrated" operation and were not for tax
avoidance purposes is not determinative of the question of whether
the surviving corporation can carry forward and deduct from its own
gross income pre-merger losses incurred by corporations with which
it merged.

APPEAL by defendant from *Collier, J.,* 14 May 1970 Session of DAVIE Superior Court.

This is an action to recover income taxes paid under protest. The parties waived trial by jury and agreed that the court should draw its conclusions of law and enter judgment based on an agreed statement of facts. The pertinent facts as stipulated by the parties are summarized as follows:

Plaintiff, Holly Farms Poultry Industries, Inc. (Holly Farms) was incorporated as a North Carolina corporation on 4 December 1961 for the purpose of organizing and carrying on an integrated poultry operation and to be a parent corporation of a large number of separate corporate entities, all of which were engaged in the poultry industry or in business directly connected with the poultry industry. One of the purposes of the integrated operation was to so manage and operate the poultry business that one corporation could manage and control the production of poultry from the breeder hens through the hatchery, feed mills, broiler farms, feed out operations, processing plants, and transportation to the retail outlets. Pursuant to this plan of an integrated operation, Holly Farms acquired, either by direct merger into it or indirectly by merger into a wholly-owned subsidiary and then into it, thirty-two corporations. Included among these were: Mocksville Feed Mills, Inc. (Mocksville Feed), Lovette Poultry Company, Inc. (Lovette Poultry), Lovette Feed Company, Inc. (Lovette Feed), Blue Ridge Hatchery, Inc. (Blue Ridge), and Davie Poultry Company, Inc. (Davie Poultry). As a part of the plan for a completely integrated operation, on 30 September 1963, Blue Ridge and Lovette Feed merged with Lovette Poultry, with the latter as the surviving corporation, and on 2 May 1964 Lovette Poultry merged into and became part of Mocksville Feed. At the time of this latter merger Lovette Poultry had a net economic loss of $604,967.89, included in which was $200,239.04 attributable to Blue Ridge and $65,670.05 attributable to Lovette Feed prior to their merger with Lovette Poultry. On 2 November 1964 Davie Poultry also merged into Mocksville Feed, with the latter being the surviving corporation. For its fiscal year ending 31 October 1964 Davie Poultry had a net operating loss of $19,299.88.

Prior to the mergers of Lovette Poultry and Davie Poultry into Mocksville Feed, all three of these corporations were wholly-owned subsidiaries of Holly Farms and had identical directors and officers. Prior to the mergers Mocksville Feed was engaged

in the manufacture of feeds, principally poultry feed. The business of Lovette Poultry at the time of its merger with Mocksville Feed was that commonly referred to as a feed out operation, the nature of the business being to furnish feed to farmers to enable them to grow chickens to a weight suitable for the processing plant. Davie Poultry was engaged in a similar business and, in addition, operated an experimental farm for the exclusive benefit of Mocksville Feed, enabling Mocksville Feed to conduct experiments with live poultry with respect to new formulas and feeds developed by it. Prior to the mergers, Lovette Poultry handled no feed other than feed manufactured by Mocksville Feed, and 90% of the production of Mocksville Feed was sold through Lovette Poultry and Davie Poultry, with the latter handling only a small amount. Prior to the mergers all three corporations conducted their principal business within Davie and Wilkes Counties, North Carolina, and since all three were managed and owned by Holly Farms, none of the three were competitors with each other. Subsequent to the mergers, the same type and kind of business was carried on in the same manner and with the same management, officers and personnel, and the mergers effected no basic change in the administration or operation of any one of the three, Mocksville Feed, Lovette Poultry, or Davie Poultry. Both before and after the mergers all chickens grown with feed manufactured by Mocksville Feed and distributed by Lovette Poultry and Davie Poultry were processed exclusively at the processing plant operated by Holly Farms.

At the time of the merger of Lovette Poultry into Mocksville Feed on 2 May 1964, Mocksville Feed had a net worth of $2,057,204.94 and Lovette Poultry had a net worth of $960,209.84. After giving effect to that merger, Mocksville Feed, the surviving corporation, had a net worth of $3,017,414.78. The net worth of Davie Poultry at the time of its merger into Mocksville Feed on 2 November 1964 was $76,935.66. After giving effect to that merger, the net worth of Mocksville Feed was $3,376,051.56.

In its North Carolina corporate income tax return for its taxable year ending 31 December 1964, Mocksville Feed carried forward a net operating loss of the submerged corporation, Lovette Poultry, to the extent of $411,200.15 and this amount was claimed as a deduction on its return for that year. The entire amount of the net economic loss attributable to Lovette Poultry could not be deducted in a single year due to the fact

that it exceeded the earnings of Mocksville Feed for its taxable year ending 31 December 1964. As a result, the balance of $193,767.74 of the net economic loss attributable to Lovette Poultry was claimed as a deduction on the corporate income tax return of Mocksville Feed for its next succeeding taxable year, which ended 31 October 1965. (Subsequent to the year 1964 the fiscal year of Mocksville Feed was changed to end on 31 October.) In addition, Mocksville Feed also carried forward and claimed as a deduction for its year ending 31 October 1965 the $19,299.88 net operating loss which had been incurred by Davie Poultry during its taxable year ending 31 October 1964, the period immediately prior to its merger with Mocksville Feed.

Defendant Commissioner of Revenue denied the deductions claimed by Mocksville Feed attributable to the net economic losses carried forward from the operations of the two submerged corporations, Lovette Poultry and Davie Poultry, and assessed deficiencies against Mocksville Feed in the amount of $26,843.77 for its taxable year ended 31 December 1964 and in the amount of $13,295.42 for its taxable year ended 31 October 1965. Mocksville Feed paid these assessments under protest and in apt time made demand for refund. The demand being refused by the defendant, Mocksville Feed instituted this suit on 18 January 1967 to recover the amounts of the deficiencies which it had paid under protest, together with interest from the dates of payment. After institution of this action and on 28 January 1967, Mocksville Feed was merged into Holly Farms. The parties stipulated that by this merger Holly Farms became the real party in interest in this action, and by agreement of the parties the court ordered Holly Farms substituted as party plaintiff.

Based on the stipulated facts, the trial court concluded as a matter of law that there was a continuity of business enterprise between the taxpayer, Mocksville Feed, and the two corporations, Lovette Poultry and Davie Poultry, with which it merged; that Mocksville Feed was the same taxable entity as those two corporations which had suffered net economic losses; and that the taxpayer, Mocksville Feed, was entitled to the claimed deductions. In accord with these conclusions of law, the court entered judgment that plaintiff recover of defendant the amount of the deficiency assessments which had been paid under protest, plus interest from the dates of payment. Defendant appealed.

*McElwee, Hall & Herring, by W. H. McElwee and Jerone C. Herring for plaintiff appellee.*

*Attorney General Robert Morgan, by Assistant Attorney General Myron C. Banks for defendant appellant.*

PARKER, J.

[4]    The issue before us is whether under the circumstances disclosed by the stipulated facts, a surviving corporation (Mocksville Feed Mills, Inc.) which resulted from the merger into it of two other corporations (Lovette Poultry Company, Inc., and Davie Poultry Company, Inc.) is entitled under G.S. 105-147 (9) d to carry over and deduct for North Carolina income tax purposes the pre-merger net economic losses of the two submerged corporations from the post-merger income earned by the combined corporate businesses. We hold that it is not.

(No question is presented on this appeal as to the right of one of the submerged corporations, Lovette Poultry Company, Inc., to carry forward and deduct from its own income losses previously incurred by two other corporations which had been submerged into it as a result of earlier corporate mergers. We express no opinion on that question.)

[1, 2]    The allowance of a deduction in the computation of taxable income is a privilege granted as a matter of legislative grace. One claiming the deduction must bring himself within the statutory provisions authorizing it, and in general the deduction may be taken only by the taxpayer to whom it accrues. 85 C.J.S., Taxation, § 1099. The North Carolina Income Tax Statutes formerly required all taxpayers to account strictly on an annual basis, reporting for each taxable year all items of gross income and claiming as deductions for that year only items properly pertaining to that accounting period. For the purpose of "granting some measure of relief to taxpayers who have incurred economic misfortune or who are otherwise materially affected by strict adherence to the annual accounting rule in the determination of taxable income," our Legislature added a loss carry-over provision to our State income tax statute. This provision first appeared in the Revenue Act of 1943, Chap. 400, Sec. 4, Subsection (g) (4), Session Laws 1943, and, as amended from time to time, has remained a part of our income tax statutes to the present time. G.S. 105-147 (9) d, formerly codified as G.S. 105-147 (6) d. This section permits, under certain conditions, a deduction of a prior year's net economic loss from current gross

income in order to determine taxable income. "Our Legislature was under no constitutional or other legal compulsion to allow any carry-over to be deducted from taxable income in a future year. It enacted the carry-over provisions purely as a matter of grace, gratuitously conferring a benefit but limiting such benefit to the net economic loss of the taxpayer after deducting therefrom the allocable portion of such taxpayer's nontaxable income." *Rubber Co. v. Shaw, Comr. of Revenue,* 244 N.C. 170, 174, 92 S.E. 2d 799, 802.

[3]   The question of whether a corporation surviving a merger is entitled to carry forward and deduct from its own gross income pre-merger losses incurred by other corporate taxpayers with which it had merged, was first presented to the North Carolina Supreme Court in *Distributors v. Shaw, Commissioner of Revenue,* 247 N.C. 157, 100 S.E. 2d 334. In that case our Supreme Court approved and adopted the reasoning in *Libson Shops v. Koehler,* 353 U.S. 382, 1 L. Ed. 2d 924, 77 S. Ct. 990, in which the United States Supreme Court, construing the loss carry-over provisions of the Federal Internal Revenue Code of 1939, held that a corporation resulting from the merger of 17 separate incorporated businesses was not entitled to carry over and deduct the pre-merger net operating losses of three of its constituent corporations from the post-merger income attributable to the other businesses, since the income against which the offset was claimed was not produced by substantially the same businesses which incurred the losses. On a second appeal of *Distributors v. Currie, Com'r. of Revenue,* reported in 251 N.C. 120, 110 S.E. 2d 880, the North Carolina Supreme Court continued to adhere to the reasoning in the *Libson Shops* case, though at the same time the opinion of the Court expressly refrained from rejecting the theory that the deduction might also be disallowed on the grounds that the corporation which survived the merger was not the "same taxable entity" as the corporations which had suffered the losses. The Court, however, chose to base its decision, which denied the deduction, on the ground that there was in that case a lack of "continuity of business enterprise." Defining these words, Moore, J., speaking for the North Carolina Supreme Court said (at page 126) :

> "This expression has a definite and well defined meaning. There is continuity of business enterprise when the income producing business has not been altered, enlarged or materially affected *by the merger.*"

The opinion then expressly held (page 127):

> "Where there has been a merger of corporations, the resulting corporation may not deduct from its post-merger net income the pre-merger economic loss of its constituent corporations unless there is a 'continuity of business enterprise' as above defined."

[4] In the case now before us the trial court concluded as a matter of law that there had been a "continuity of business enterprise" between the taxpayer, Mocksville Feed Mills, Inc., and the two corporations, Lovette Poultry Company, Inc., and Davie Poultry Company, Inc., with which it merged. The facts do not support this conclusion. Immediately before the merger of Lovette Poultry into Mocksville Feed, the latter corporation had a net worth of $2,057,204.94 and was engaged in the manufacture of feeds. Immediately after the merger Mocksville Feed had a net worth of $3,017,414.78 and was engaged not only in the manufacture of feeds but, in addition, was engaged in the business of "feeding-out" chickens. The income producing business was thus both substantially enlarged and materially affected by the merger. The subsequent merger of Davie Poultry into Mocksville Feed further increased the net worth of the enterprise by $76,935.66 and added an experimental farm as well as additional "feed out" operations to the combined enterprise. Thus, each merger both substantially enlarged and materially affected the income producing business of the surviving corporation. The businesses of each of the submerged loss corporations were even more dramatically affected. By the miracle of a merger each was transformed in an instant from a relatively small chicken feeding operation, which was losing money, into a much larger and financially stronger combined manufacturing and feeding operation, which operated at a profit. To find here any continuity of business enterprises requires either that the three businesses be considered as though they had always been one or that the mergers be ignored. However, the fact is that the three separate businesses were not always one and the mergers did in fact occur. In our opinion, and we so hold, each merger so substantially enlarged and materially affected the income producing business that there was not here a "continuity of business enterprise" within the definition laid down in *Distributors v. Currie, Com'r. of Revenue, supra.*

[5, 6] Appellee seeks to distinguish the present case from *Distributors v. Currie, Com'r. of Revenue, supra,* by pointing out

there was here a "vertical type" merger, in which the several merged corporations were doing different jobs in one continuous chain of processing, while the mergers before the Court in that case were of a "horizontal type," in which each of the corporations involved were doing basically the same job. In our opinion this distinction, if any, is without a difference. Furthermore, the fact that the mergers in the present case may have been made in pursuance of an overall plan to bring into being an "integrated" operation, and were not for tax avoidance purposes, is, in our opinion, simply not determinative of the question before us.

We also note that while Congress changed the *Libson Shops* doctrine by enactment of § 381 of the Internal Revenue Code of 1954, no similar amendment to the North Carolina Revenue Act has been enacted by the North Carolina General Assembly. Five regular biennial sessions of the North Carolina General Assembly have occurred since our Supreme Court rendered its decision in *Distributors v. Currie, Com'r. of Revenue, supra.* The absence of any pertinent amendment for so long a period would indicate approval by the Legislature of the Court's construction of its statute.

The judgment appealed from is

Reversed.

MALLARD, C.J., and HEDRICK, J., concur.