THE B. F. GOODRICH COMPANY *v.* OREST T. DUBNO,
COMMISSIONER OF REVENUE SERVICES
(12158)

PETERS, C. J., HEALEY, PARSKEY, DANNEHY and COVELLO, Js.

1

Argued February 6—decision released April 23, 1985

*Richard K. Greenberg,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Paul M. Scimonelli,* assistant attorney general, for the appellant (defendant).

*J. Danford Anthony, Jr.,* with whom was *Kenneth E. Werner,* for the appellee (plaintiff).

PETERS, C. J. The issue in this case is the treatment the Connecticut corporation business tax affords certain business gains and losses of a multistate corporation doing business in Connecticut. The plaintiff, The B. F. Goodrich Company, appealed to the trial court from an adverse determination of its 1975 tax liability by the defendant, Orest T. Dubno, commissioner of revenue services of the state of Connecticut. The trial court, having found the issues for the plaintiff, ordered the defendant to refund the plaintiff the amount of $2220.50 plus interest. The defendant appealed to this court. We find error in part.

The case was tried on a stipulation of facts. The plaintiff is a New York corporation that has its principal place of business in Akron, Ohio. In Connecticut, the plaintiff owned and operated a sponge-rubber-product

manufacturing plant located in Shelton. During 1974, the plaintiff contracted to sell both the plant and the plant machinery and equipment to a single purchaser. The sale of the machinery and equipment was fully executed in 1974. The sale of the plant itself was, however, partially deferred. There was no closing in 1974, and the deed to the plant was placed in escrow. Nonetheless, the plaintiff's book entries in January, 1975, recorded the sale as having taken place in 1974. Before title had in fact passed to the purchaser, the plant was destroyed by fire in March, 1975.

The plaintiff, in filing its 1974 Connecticut corporation business tax return pursuant to General Statutes § 12-218, recognized a loss in the amount of $6,992,334 on the sale of the Shelton plant's machinery and equipment. Upon audit, the defendant determined that this loss should be allocated to Connecticut in accordance with § 12-218 (2), with the result that the plaintiff had negative net income for 1974 tax purposes under § 12-214 in the amount of $6,736,029. This determination is unchallenged.

In 1975, the plaintiff received a $2,775,000 insurance settlement to cover its claims for the fire at the Shelton plant. The defendant, in auditing the plaintiff's 1975 tax return, determined that the plaintiff realized a net gain of $1,448,531 as a result of the receipt of these insurance proceeds, and that this gain should be allocated to Connecticut under § 12-218 (2). Because the plaintiff also realized other taxable gains in Connecticut in 1975, the defendant determined that the plaintiff had positive net income for 1975 tax purposes under § 12-214 in the amount of $1,511,117. The plaintiff's net gain on the Shelton plant was, however, also taxed by other states in which that gain was treated as apportionable income rather than as income allocated to Connecticut.

The plaintiff sought to apply its 1974 loss as an operating loss carryover to offset its 1975 income. The defendant, determining that such a loss carryover was not authorized, calculated the plaintiff's 1975 tax liability as $151,112. The plaintiff has paid $2270.50 of this amount.

The parties disagree on two issues of law that affect the plaintiff's 1975 tax liability. First, the plaintiff claims that its 1975 gain after the destruction of the Shelton plant was an involuntary conversion that was not allocable to Connecticut pursuant to § 12-218 (2).[1] The defendant would allocate this gain to Connecticut. Second, the plaintiff claims that the losses it incurred from the sale of the machinery and equipment in 1974 constituted a net operating loss which it was entitled to carry forward to its 1975 tax liability pursuant to § 12-217.[2] The defendant would disallow this loss carryover. Although both of the claims affect the calculation of the plaintiff's 1975 tax liability, they are otherwise unrelated to each other.

---

[1] At the time in question, General Statutes § 12-218 (2) provided in relevant part: "net gains or losses from sales, scrappage, abandonment, book write-offs or rentals of tangible assets held, owned or used in connection with the trade or business of the taxpayer but not for sale or for rent in the regular course of business shall be allocated to the state if the property sold, scrapped, abandoned, written off or rented is situated in the state at the time of the sale, scrappage, abandonment or write-off or during the rental thereof, otherwise such net gains or losses shall be allocated outside the state." Income not allocated was apportioned according to the provisions of General Statutes § 12-218 (3). Section 12-218 was amended in 1981 to eliminate any provision for allocation. Public Acts 1981, No. 81-411, § 2.

[2] At the time in question, General Statutes § 12-217 provided in relevant part: "Notwithstanding anything in this section to the contrary, (1) any excess of the deductions provided in this section for any income year commencing on or after January 1, 1973, over the gross income for such year, shall be an operating loss of such income year and shall be deductible as an operating loss carryover in each of the five income years following such loss year." This portion of § 12-217 was amended in 1977. See footnote 4, infra.

The trial court determined that the plaintiff was correct on both of its claims, and ordered the defendant to refund the plaintiff the amount stipulated by the parties. The defendant's appeal challenges the trial court's resolution of both claims. We conclude that the trial court was correct in holding for the plaintiff on its involuntary conversion claim but incorrect in holding that the plaintiff was entitled to a loss carryover.

I

The defendant's first claim of error questions the conclusion of the trial court that the plaintiff's gain from the 1975 insurance settlement was an involuntary conversion that should have been apportioned among all the states in which the plaintiff does business rather than allocated to Connecticut. The governing statute in 1975 provided that "net gains or losses from sales, scrappage, abandonment, book write-offs or rentals of tangible assets . . . shall be allocated to the state . . . . " General Statutes § 12-218 (2). The defendant claims that the insurance settlement qualifies as a book write-off and therefore should have been allocated to Connecticut. We agree with the trial court that the insurance proceeds were not allocable.

The crucial issue is the meaning of the term "write-off." The statute itself does not define the term and we therefore accord it its commonly understood meaning. See *Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1975). The trial court agreed with the plaintiff that a write-off is commonly understood to mean a cancellation or removal of an asset from business accounts. The defendant concedes that a write-off is ordinarily associated with a loss and that the destruction of the plant led not to a loss, but to a gain. It is

therefore incongruous to characterize the gain from the receipt of the insurance proceeds as resulting from a write-off.[3]

Even if the statutory reference to "gains or losses from sales, scrappage, abandonment, book write-offs or rentals . . ." might possibly be read to embrace a gain analogous to that presented in this case, ambiguities in a statute imposing a tax are to be resolved in favor of the taxpayer. *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 154, 285 A.2d 352 (1971). We therefore agree with the trial court that the insurance proceeds were not an allocable gain under General Statutes § 12-218 (2).

The lack of a statutory foundation for allocating the insurance proceeds to Connecticut also defeats the defendant's theoretical claim that the legislature intended all of a taxpayer's nonbusiness income to be allocated. The defendant argues that, as nonbusiness income, the insurance proceeds should have been allocated. The statute, however, specifically enumerated only certain designated items of income and loss subject to allocation, leaving the remainder to be apportioned. " 'Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive.' " (Citations omitted.) *State* v. *Kish,* 186 Conn. 757, 766, 443 A.2d 1274 (1982). An item of loss or gain, not designated as allocable under § 12-218, is not allocable simply because it might be characterized generally as nonbusiness income.

The defendant's final argument is that the insurance proceeds should have been allocated to Connecticut because such gains would have been treated as capital

---

[3] It is also factually inaccurate to characterize the gain as resulting from a write-off. The parties stipulated that the plant was written off the books before the fire, at the time the sale of the plant was negotiated. The actual write-off was therefore totally unconnected with the receipt of insurance proceeds.

gains for federal tax purposes under § 1231 of the Internal Revenue Code of 1954 and capital gains are usually allocated for state tax purposes. It is true that the legislature has chosen under some circumstances to look to the Internal Revenue Code as a point of reference for some state tax provisions. When our tax law has thus relied on portions of the federal tax code, this court has held that federal tax concepts are incorporated into state law. See *First Federal Savings & Loan Assn.* v. *Connelly,* 142 Conn. 483, 492-93, 115 A.2d 455 (1955), appeal dismissed, 350 U.S. 927, 76 S. Ct. 305, 100 L. Ed. 811 (1956); *McKesson & Robbins, Inc.* v. *Walsh,* 130 Conn. 460, 461-63, 35 A.2d 865 (1944). The corporation business tax, however, contained in 1975 no provision incorporating federal capital gains standards and therefore the defendant's reliance on § 1231 is inappropriate. The trial court was correct in determining that the insurance proceeds were to be apportioned rather than allocated.

## II

The defendant's second claim is that the trial court erred in interpreting General Statutes § 12-217 to allow a corporation with positive net income from its overall operations to carry over a Connecticut loss and use it as a deduction when calculating its Connecticut income. At the time in question, General Statutes § 12-217 allowed a carryover deduction for "any excess of the deductions provided in this section for any income year commencing on or after January 1, 1973, over the gross income for such year." The trial court found § 12-217 to be ambiguous and held for the plaintiff on the theory that ambiguities in a tax statute should be resolved in favor of the taxpayer. The defendant contends that the language of § 12-217 is clear and that it provides for loss carryover deductions only when a corporation as a whole suffers a loss. We agree with the defendant.

The cardinal rule of statutory construction is that when the words employed by the legislature are clear, they are to be given their commonly approved meaning and further judicial interpretation is not necessary. See *State* v. *Kish,* supra, 764; *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978). The common meaning of "excess of . . . deductions . . . over . . . gross income" is that a loss is generated for carryover purposes if and only if all of a corporation's deductible losses are greater than its total gross income. There is nothing in the statute that allows a carryover when allocated and apportioned Connecticut losses exceed allocated and apportioned Connecticut income. The plaintiff did not have deductions in excess of its overall gross income in 1974. The trial court therefore erred in allowing the plaintiff a loss carryover decuction.[4]

Even if we were to agree with the trial court that the terms of § 12-217 are ambiguous, we would disagree with the trial court's resolution of the ambiguity. In reaching the conclusion that the plaintiff was entitled to a loss carryover deduction, the trial court applied the rule that taxpayers are to be favored in the construction of statutes that impose a tax. See, e.g., *Hartford Electric Light Co.* v. *Sullivan,* supra, 154. Section 12-217, however, does not impose a tax; it allows a tax deduction. Its construction must therefore accord with a quite different rule. "Deductions and exemptions from otherwise taxable income are a matter of legis-

---

[4] General Statutes § 12-217 was amended in 1977 to allow carryover deductions for any excess of total deductions over total gross income "or the amount of such excess allocated and apportioned to this state under the provisions of [General Statutes] section 12-218." Public Acts 1977, No. 77-550. Although the amendment affects the calculation of the amount to be deducted as a carryover once it has been determined that such a deduction is available, it leaves in place the basic definition of loss and therefore has no effect on deduction availability. Since only the issue of availability of a loss carryover deduction is contested here, we need not consider the amendment further.

lative grace and are thus strictly construed. E.g., *Commissioner* v. *Sullivan,* 356 U.S. 27, 28, 78 S. Ct. 512, 2 L. Ed. 2d 559 (1958); *Woodstock* v. *The Retreat, Inc.,* 125 Conn. 52, 56, 3 A.2d 232 (1983)." *Yaeger* v. *Dubno,* 188 Conn. 206, 212, 449 A.2d 144 (1982); see *Stone* v. *Sullivan,* 154 Conn. 498, 503 n.3, 227 A.2d 76 (1967) (comparison of the two rules). If the provisions of § 12-217 were ambiguous, the ambiguity would have to be resolved against the plaintiff.

Our conclusion regarding the scope of § 12-217 is not inconsistent with the general purpose of loss carryover deductions. Such deductions counteract the inequity that may result from breaking up taxable activity into relatively short periods of time and taxing a discrete income producing period without regard to a preceding period of loss. Section 12-217 allows corporations to avoid some overstatements of income by allowing an offset when the taxpayer has had an overall loss. Although corporations would be further benefited by greater availability of loss carryover deductions, that is a consideration for the legislature, not for the courts.

There is no error in the trial court's determination that the 1975 insurance proceeds were apportionable. There is error in the determination that the plaintiff was entitled to a loss carryover deduction in 1975, the judgment ordering the defendant to give the plaintiff a refund is set aside and the case remanded with direction to render judgment ordering the plaintiff to pay to the defendant additional 1975 tax of $4732.50, plus interest, the amount stipulated by the parties.

In this opinion the other judges concurred.