GOLF DIGEST/TENNIS, INC. *v.* OREST T. DUBNO,
COMMISSIONER OF REVENUE SERVICES
(12979)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and SCHALLER, Js.

Argued March 10—decision released May 12, 1987

*Charles H. Lenore,* with whom were *Robert S. Tobin,* pro hac vice, and, on the brief, *Kenneth E. Werner* and *William G. DeLana,* for the appellant (plaintiff).

*Paul M. Scimonelli,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (defendant).

SHEA, J. The sole issue in this case, which comes to us by way of reservation, is whether General Statutes § 12-217 authorizes the surviving corporation in a merger or consolidation to deduct from its income the operating loss carryover of the merged or consolidated corporation. The plaintiff, Golf Digest/Tennis, Inc., appealed to the Superior Court from a decision of the defendant commissioner of revenue services holding that the plaintiff had improperly claimed operating loss carryovers in the tax returns it had filed for the years 1980 and 1981. The trial court ordered a reservation upon stipulated facts to determine the propriety of the defendant's assessment of additional corporation business taxes against the plaintiff. In responding to the first reserved question, which is the only question we

need address,[1] we conclude that § 12-217 does not authorize the surviving corporation to deduct the operating loss carryovers of the merged or consolidated corporation for the tax years involved in this case.

The parties stipulated to the following facts. The plaintiff was formed on November 21, 1979, under the laws of Delaware, as a corporation into which two Illinois corporations, Golf Digest, Inc., and Tennis Features, Inc., would be consolidated. Because Golf Digest and Tennis Features were each qualified to do business in Connecticut in 1979, both were subject to our corporation business tax. General Statutes §§ 12-213 through 12-242i. In that year Tennis Features recognized a net operating loss for the purpose of the federal tax law of $801,147, of which $540,858 was allocated to Connecticut. See General Statutes § 12-218. On December 31, 1979, Golf Digest and Tennis Features were consolidated into the plaintiff. In 1980 and 1981, Tennis Features, as a division of the plaintiff, continued to operate at a loss.

---

[1] Three questions of law have been reserved for our advice: "(A) For purposes of the Connecticut Corporation Business Tax, is the surviving corporation in a merger or consolidation entitled to the same treatment under General Statutes § 12-217 with respect to operating loss carryovers of the merged or consolidated corporation as would be accorded to such surviving corporation under the federal corporation net income tax law with respect to the net operating loss carryovers of the merged or consolidated corporation? (B) For purposes of the Connecticut Corporation Business Tax, can the surviving corporation resulting from a merger or consolidation deduct from its income, under General Statutes § 12-217, the operating loss carryover of the merged or consolidated corporation if there is a continuity of business enterprise between the corporations? [and] (C) For purposes of the Connecticut Corporation Business Tax, is the deduction for operating loss carryovers under General Statutes § 12-217 available only to the entity which incurred the operating loss?"

Because we view the third question essentially to be an alternative phrasing of the issue presented by the first, we shall not separately address the third question. In footnote 4, infra, we explain why we need not fully consider the second question.

Relying upon General Statutes § 12-217,[2] which allows a net operating loss of a particular "income year" to be "deductible as an operating loss carry-over in each of the five income years following such loss year," the plaintiff, in its tax returns for 1980 and 1981, claimed operating loss carryovers of $85,643 and $455,215, respectively, based on the 1979 operating loss of Tennis Features apportioned to Connecticut. After examining these returns, the defendant assessed additional taxes against the plaintiff of $7806.83 and $22,954.34 for 1980 and 1981, respectively, construing § 12-217 not to authorize the deduction by the plaintiff, the surviving corporation, of operating loss carryovers attributable to Tennis Features, the consolidated corporation.

---

[2] "[General Statutes (Rev. to 1981)] Sec. 12-217. DEDUCTIONS FROM GROSS INCOME. In arriving at net income as defined in section 12-213, whether or not the taxpayer is taxable under the federal corporation net income tax, there shall be deducted from gross income, (A) all items deductible under the federal corporation net income tax law effective and in force on the last day of the income year . . . except no deduction shall be allowed for (1) federal taxes on income or profits, losses of other calendar or fiscal years, retroactive to include all calendar or fiscal years beginning after January 1, 1935, interest received from federal, state and local government securities, if any such deductions are allowed by the federal government, and (2) interest paid during the income year, other than sixty per cent of interest as defined in section 12-213 paid by state banks and trust companies, national banks, mutual savings banks, and savings and loan associations, doing business in this state, in the income year beginning in 1971 and 1972, seventy per cent of such interest in the income year beginning in 1973, eighty per cent of such interest in the income year beginning in 1974, ninety per cent of such interest in the income year beginning in 1975 and one hundred per cent of such interest in each income year thereafter, and ninety per cent of interest paid by all other taxpayers subject to this chapter in the income year beginning in 1973, and one hundred per cent of such interest paid in each income year thereafter. Notwithstanding anything in this section to the contrary, (1) any excess of the deductions provided in this section for any income year commencing on or after January 1, 1973, over the gross income for such year or the amount of such excess allocated and apportioned to this state under the provisions of section 12-218, shall be an operating loss of such income year and shall be deductible as an operating loss carryover in each of the five income years following such loss year,

The plaintiff paid the disputed amount of $30,661.17, and then requested a hearing before the defendant commissioner. See General Statutes § 12-236. When the defendant affirmed his assessment and concomitantly denied the plaintiff's requests for correction, the plaintiff appealed to the Superior Court, pursuant to General Statutes § 12-237.[3] In that court, the parties jointly

provided the portion of such operating loss which may be deducted as an operating loss carryover in any income year following such loss year shall be limited to the lesser of (a) any net income greater than zero of such income year following such loss year, or in the case of a company entitled to allocate and apportion its net income under the provisions of section 12-218, the amount of such net income which is allocated and apportioned to this state pursuant thereto, or (b) the excess, if any, of such operating loss over the total of such net income for each of any prior income years following such loss year, such net income of each of such prior income years following such loss year for such purposes being computed without regard to any operating loss carryover from such loss year allowed by this sentence and being regarded as not less than zero, and provided, further, the operating loss of any income year shall be deducted in any subsequent year, to the extent available therefor, before the operating loss of any subsequent income year is deducted, and (2) any net capital loss, as defined in the federal corporation net income tax law effective and in force on the last day of the income year, for any income year commencing on or after January 1, 1973, shall be allowed as a capital loss carryover to reduce, but not below zero, any net capital gain, as so defined, in each of the five following income years, in order of sequence, to the extent not exhausted by the net capital gain of any of the preceding of such five following income years, and (3) any net capital losses allowed and carried forward from prior years to income years beginning on or after January 1, 1973, for federal income tax purposes by companies entitled to a deduction for dividends paid under the federal corporation net income tax law other than companies subject to the gross earnings taxes imposed under chapters 211 and 212, shall be allowed as a capital loss carryover. . . ."

[3] "[General Statutes] Sec. 12-237. APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under the provisions of this part may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. . . . Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the

requested that the case be reserved to the Appellate Court for advice on the stated questions of law. See footnote 1, supra. The trial court granted this request, and, after transfer of the appeal to this court, the present proceedings ensued.

We note preliminarily that the parties have stipulated that, for federal tax purposes, the carryover of the 1979 operating loss of Tennis Features was available to the plaintiff for the years in question under § 381 of the Internal Revenue Code of 1954. The stipulation describes the consolidation into the plaintiff as a tax-free reorganization as defined in § 368 (a) (1) (A) of the code. Section 381 expressly provides, inter alia, that, in such a tax-free reorganization, a corporation that acquires the assets of another corporation shall succeed to and take into account the net operating loss carryovers of the distributor or transferor corporation. We further note that it is undisputed that § 12-217 of our General Statutes would authorize Tennis Features itself, had it retained its separate corporate identity, to deduct its 1979 operating loss as a carryover in each of the five subsequent years.

Unlike § 381 of the Internal Revenue Code of 1954, § 12-217 does not specifically address the question of the ability of a surviving corporation to deduct as a carryover the net operating losses attributable to a consolidated corporation. Because our corporation business tax, including § 12-217, refers to federal tax law in several instances, the plaintiff argues that, in construing § 12-217, we ought to adhere to our established reliance upon federal tax principles. See *Skaarup Shipping Corporation* v. *Commissioner,* 199 Conn. 346, 351,

rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which may be denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

507 A.2d 988 (1986); *The B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 7, 490 A.2d 991 (1985); *Woodruff* v. *Tax Commissioner,* 185 Conn. 186, 191, 440 A.2d 854 (1981).

The plaintiff cites the decision by the Supreme Court of Ohio in *Gulf Oil Corporation* v. *Lindley,* 61 Ohio St. 2d 23, 398 N.E.2d 790 (1980), in support of its proposition that § 381 is the applicable federal rule impliedly incorporated in § 12-217. Interpreting a statute analogous to § 12-217; see Ohio Rev. Code Ann. § 5733.04; the Ohio court addressed the issue of whether a taxpayer succeeds to the net operating losses of its former subsidiaries that have merged into the taxpayer. A related Ohio statute provided that a taxpayer's method of accounting must be the same as its method of accounting for federal income tax purposes. See Ohio Rev. Code Ann. § 5733.031 (B). The court in *Gulf Oil Corporation* v. *Lindley,* supra, 29, stated: "We are persuaded that Sections 381 (a) and (c) prescribe a method of accounting for a net operating loss following corporate acquisitions. These provisions do not create a new deduction; rather, corporations are entitled to deduct net operating loss carryovers under Section 172 of the Internal Revenue Code and [Ohio Rev. Code Ann. §] 5733.04 (I) (1). Section 381 merely fills a gap in Ohio law."

We reject the notion that § 381 represents merely a method of accounting that must be used to fill a gap in the carryover provisions of § 12-217. Sections 446 through 472 of the Internal Revenue Code discuss methods of accounting, which include the cash receipts or disbursements, accrual, installment, and completed contract methods. Corporations are ordinarily authorized to use their regular accounting method, unless such method does not clearly reflect income. See B. Bittker & J. Eustice, Federal Income Taxation of Cor-

porations and Shareholders (4th Ed. 1979) § 1.01, p. 1-4. While the accurate reporting of income is the raison d'etre of the federal provisions regarding accounting methods, § 381 was enacted to provide a comprehensive set of rules for the preservation of tax attributes. "The drafters hoped to protect taxpayers against the loss of favorable tax attributes, as well as to prevent the avoidance of unfavorable ones by paper reorganizations." B. Bittker & J. Eustice, supra, § 16.10, p. 16-16. Indeed, rather than itself representing a method of accounting, § 381 provides that the acquiring corporation in a corporate reorganization shall succeed to the method of accounting used by the distributor or transferor corporation. See I.R.C. § 381 (c) (4). Thus, despite the pronouncement of the *Gulf Oil Corporation* court, § 381 appears to be a substantive provision that creates legal rights apart from those set forth in the operating loss carryover provisions of § 172 of the Internal Revenue Code.

Relying upon federal tax principles in attempting to resolve the issue before us does not necessitate finding a wholesale incorporation into § 12-217 of the rules embodied in § 381 of the code. More instructive would be an examination of the federal resolution of that issue under the Internal Revenue Code of 1939, which, like our current corporation business tax, provided no express governing provision. In *Libson Shops, Inc.* v. *Koehler*, 353 U.S. 382, 386–87, 77 S. Ct. 990, 1 L. Ed. 2d 924, reh. denied, 354 U.S. 943, 77 S. Ct. 1390, 1 L. Ed. 2d 1542 (1957), the United States Supreme Court discerned no indication in the legislative history of the general carryover provisions as they existed under the 1939 code "that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger." Concluding that the

income against which a carryover is claimed must have been produced "by substantially the same businesses which incurred the losses"; id., 390; the *Libson* court affirmed the denial of the claimed carryover deduction because the business units that had the pre-merger losses continued to have losses after the merger.

As we have stated, the parties stipulated to the fact that Tennis Features, as a division of the plaintiff, continued to operate at a loss in 1980 and 1981. The income against which the plaintiff claimed a carryover for those years was therefore not produced by substantially the same business unit that had suffered the pre-consolidation losses. Thus, even if we were to construe § 12-217 as incorporating the principle set forth in *Libson*, the circumstances of the present case would preclude an application of that principle favorable to the plaintiff for the 1980 and 1981 tax years.[4]

---

[4] The inapplicability of the *Libson* test for the tax years 1980 and 1981, while not ending our effort to construe General Statutes § 12-217 in answering the first reserved question, is dispositive in respect to the second reserved question. *Libson Shops, Inc.* v. *Koehler,* 353 U.S. 382, 77 S. Ct. 990, 1 L. Ed. 2d 924 (1957); see footnote 1, supra. Although the plaintiff conceded in oral argument that an affirmative answer by us to the second question would not support its claims for carryover deductions for 1980 and 1981, which are the only claims at issue in this case, the plaintiff urges us nevertheless to decide whether § 12-217 incorporates the *Libson* test. Such a determination, the plaintiff asserts, will inform its litigation choices with respect to the tax returns it filed for the years subsequent to 1981, when Tennis Features did earn taxable income apportioned to Connecticut. We respond, however, that Practice Book § 4147 (formerly § 3133) provides in part that this court "will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action." Because the second reserved question is not reasonably certain to enter into the decision of this case, and because we do not give advisory opinions; see *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 75, 523 A.2d 486 (1987); we decline to address the second reserved question.

We next examine the history and language of § 12-217. The original predecessor of § 12-217, which was enacted as part of the Corporation Business Tax Act of 1935, c. 66b, § 419c, provided that, "[i]n arriving at net income as defined in section 417c, whether or not the taxpayer is taxable under the federal corporation net income tax, there shall be deducted from gross income, (A) all items deductible under the federal corporation net income tax law effective and in force on the last day of the income year except (1) federal taxes on income or profits, losses of prior years . . . . ." See generally *W. T. Grant Co.* v. *McLaughlin,* 129 Conn. 663, 664, 30 A.2d 921 (1943). Section 12-217 retains the exclusion from deductible items of losses of prior years, notwithstanding any availability of such a deduction under federal tax law. See 26 U.S.C. § 172. Our General Assembly, however, in 1973, amended § 12-217 to include a provision allowing the operating loss carryover deduction. That provision reads in part: "Notwithstanding anything in this section to the contrary, (1) any excess of the deductions provided in this section for any income year commencing on or after January 1, 1973, over the gross income for such year or the amount of such excess apportioned to this state under the provisions of section 12-218, shall be an operating loss of such income year and shall be deductible as an operating loss carry-over in each of the five income years following such loss year . . . . ."

Section 12-217 provides both that "no deduction shall be allowed for . . . losses of other calendar or fiscal years," and, nevertheless, that the operating loss of a particular income year shall be deductible as an operating loss carryover in each of the five subsequent income years. "[W]e have uniformly adhered to the view that deductions from otherwise taxable income are a matter of legislative grace and hence are strictly construed against the taxpayer." *Skaarup Shipping*

*Corporation* v. *Commissioner,* supra, 352; see *Harper* v. *Tax Commissioner,* 199 Conn. 133, 142, 506 A.2d 93 (1986); *The B. F. Goodrich Co.* v. *Dubno,* supra, 8–9. In order to prevail in light of this rule of construction, the plaintiff must establish that § 12-217 clearly and unambiguously authorizes a surviving corporation to claim a deduction for the operating losses that had been incurred by an acquired corporation prior to the consolidation. This the plaintiff cannot do, and therefore it is unable to claim the deduction. Accord *Fall River Canning Co.* v. *Department of Taxation,* 3 Wis. 2d 632, 637–38, 89 N.W.2d 203 (1958). As we have stated, "[a]lthough corporations would be further benefited by greater availability of loss carryover deductions, that is a consideration for the legislature, not for the courts."[5] *The B. F. Goodrich Co.* v. *Dubno,* supra, 9.

The first question that was reserved to this court stated the issue as follows: "For purposes of the Connecticut Corporation Business Tax, is the surviving corporation in a merger or consolidation entitled to the same treatment under General Statutes § 12-217 with respect to operating loss carryovers of the merged or consolidated corporation as would be accorded to such surviving corporation under the federal corporation net income tax law with respect to the net operating loss

---

[5] We note that § 12-217-1 of the Regulations of Connecticut State Agencies, which became effective July 21, 1982, provides: "CARRYOVERS. (a) The operating loss carryover provisions are applicable only to a company which was subject to the tax imposed under chapter 208 in, and filed the annual return required to be made for, the year in which the operating loss occurred.

"(b) The capital loss carryover provisions are applicable only to a company which was subject to the tax imposed under chapter 208 in, and filed the annual return required to be made for, the year in which the capital loss occurred."

Because § 12-217-1 was in effect neither during the tax years 1980 and 1981 nor at the time the plaintiff filed its tax returns for those years, this regulation has no bearing on the decision of this case. See General Statutes § 1-1 (u).

carryovers of the merged or consolidated corporation?" For the reasons stated above, our answer to this reserved question is "no."

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.