ARONSON, J.
 

 This action is an appeal by the plaintiff from a determination of the commissioner of revenue services (commissioner) disallowing the plaintiffs net operating loss carryover deduction on its corporation business tax return for the income year ending December 31, 1986. The issue in the present case is whether the surviving corporation, resulting from a statutory merger, can deduct from its income the operating loss carryover of the merged coiporations pursuant to General Statutes § 12-217 if there is a continuity of business enterprise between the corporations.
 

 The following facts have been either stipulated or found by the court. Prior to December 30, 1985, the Cingari family (Cingaris) owned and operated three retail supermarkets in Connecticut: Grade A Market, Inc., located in the Shippen section of Stamford; Grade A Market of Darien, Inc., located in Darien and Grade A Market of Newfield, Inc., located in the Newfield section of Stamford. Each supermarket was a separate corporation.
 

 Historically, the Cingaris first created Grade A Market, Inc., in 1960 in order to operate a retail supermarket in the Shippan section of Stamford. As business increased, the Cingaris opened a supermarket in 1964
 
 *381
 
 in Darien, creating Grade A Market of Darien, Inc. In 1979, the Cingaris opened a third supermarket in the Newfield section of Stamford known as Grade A Market of Newfield, Inc.
 

 From 1979 to 1985, the three corporations had identical officers, directors and shareholders. Receipts would be deposited into three separate bank accounts and, at the end of every business day, the receipts would be “sweeped” into a single account. Payroll for all three corporations was paid from a single account. Vendors for all three corporations were also paid from a single account. All three supermarkets, before and after the merger in 1985, were known as Grade A Market. Employees for one supermarket would be interchangeable and be assigned to different stores on different days. All employees were covered under the same health plan and the same pension plan. The accounting staff and management were the same for all three supermarkets. To the vendors and the public, there was no distinction between the three stores. The Cingaris had organized the management of the various operations of the three stores among the family members. As an example, one family member would be in charge of groceries, managing the groceiy department of all three stores. Except for the formalistic corporate structure of the three corporations, the three stores were run as one family business.
 

 In 1985, the two younger corporations merged with the oldest corporation, Grade A Market, Inc., as the surviving corporation. This was a statutory merger, pursuant to General Statutes §§ 33-364 and 33-366, and under § 368 (a) (1) (A) of the Internal Revenue Code. The merger was designed to curtail administrative costs. To vendors, employees, customers and the public, there was no change in the business enterprise. The business continued as it had since 1979.
 

 
 *382
 
 Subsequent to the merger, Grade A Market, Inc., continued to maintain profit and loss records for each supermarket as was done prior to the merger. The three retail supermarkets continued, after the merger, to operate as they did prior to the merger without interruption as to the staff, payroll, management, ownership, control or administrative operations.
 

 In 1986, Grade A Market, Inc., attempted to deduct the carryover losses of Grade A Market of Darien, Inc. and Grade A Market of Newfield, Inc. Grade A Market of Newfield, Inc., had a net operating loss of $85,772 in 1985 while Grade A Market of Darien, Inc., had a $73,754 net operating loss in 1985. Grade A Market, Inc., had no net operating loss in 1985. In 1986, the year of the merger, Grade A Market, Inc., had a consolidated net operating income of $267,870 from the operation of all three supermarkets. In 1986, the supermarket formerly known as Grade A Market, Inc., registered a net operating income of $23,358. In 1986, the supermarket formerly known as Grade A Market of Darien, Inc., had a net operating loss of $91,846, while the supermarket formerly known as Grade A Market of Newfield, Inc., had an income of $336,358. In 1987, Grade A Market, Inc., had a consolidated net operating profit of $657,007 from the operation of all three supermarkets. The supermarket formerly known as Grade A Market, Inc., had a net operating loss of $64,709 in 1987. The supermarket formerly known as Grade A Market of Darien, Inc., had a net operating income of $83,721 in 1987, and the supermarket formerly known as Grade A Market of Newfield, Inc., had a net operating income of $638,065 in 1987.
 

 The commissioner disallowed the net operating loss carryover deduction by Grade A Market, Inc., of the premerger losses of the two merged corporations resulting in an additional assessment of tax and interest. A loss carryover allows a corporation that incurred
 
 *383
 
 operating losses to deduct those losses in the five years following the loss year. General Statutes § 12-217.
 

 The court is called upon to revisit the issue of the deductibility of a net operating loss carryover attributable to a corporation that no longer exists because it has merged into or has been acquired by another corporation.
 
 [1]
 

 The legislative purpose for allowing a deduction of operating loss carryovers from the income of a surviving corporation, in a statutory corporate merger, was to “ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. [Deductions] were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year.”
 
 Libson Shops, Inc.
 
 v.
 
 Koehler,
 
 353 U.S. 382, 386, 77 S. Ct. 990, 1 L. Ed. 2d 924, reh. denied, 354 U.S. 943, 77 S. Ct. 1390, 1 L. Ed. 2d 1542 (1957); accord
 
 B.F. Goodrich Co.
 
 v.
 
 Dubno,
 
 196 Conn. 1, 9, 490 A.2d 991 (1985).
 

 Whereas under § 381 of the Internal Revenue Code, a surviving corporation of a merger assumes all the tax attributes of the merged corporation and can deduct the net operating loss carryover of that corporation, the law in Connecticut is otherwise. In Connecticut, the surviving corporation in a merger consolidation would not be treated the same as it would under the federal corporation net income tax law with respect to the operating loss carryovers of the merged or consolidated coiporation.
 
 Golf Digest/Tennis, Inc.
 
 v.
 
 Dubno,
 
 203 Conn. 455, 465-66, 525 A.2d 106 (1987).
 

 Looking at the mechanics of corporate acquisitions, one sees that there are basically three ways to purchase
 
 *384
 
 a coiporation. The first method is to acquire the assets of a corporation. The second method is to acquire the stock of the coiporation. The third method, which is the method used in this action, is to engage in a statutory merger. 13A B. Fox & E. Fox, Business Organizations: Corporate Acquisitions and Mergers, § 23.01, pp. 23-2-23-3 (1996).
 

 A statutory merger permits “two or more corporations to combine in such a way that one of the combining corporations remains in existence while the other participating corporations disappear.” Id., § 23.01, p. 23-5.
 

 “Upon the consummation of a statutory merger, the surviving coiporation becomes the owner of the properties and rights of the merged companies and assumes responsibility for all of their liabilities. This transfer of ownership and the concurrent assumption of liabilities occurs by
 
 operation of law
 
 when the provisions of the governing merger statute have been satisfied.” (Emphasis in original.) Id., § 23.02 [1], p. 23-6; see General Statutes § 33-369 (c). For a statutory merger to qualify as a tax free reorganization, it is essential that continuity of interest be maintained on the part of the shareholders of the acquired company after the transaction is completed. Generally, continuity of interest is maintained if the former stockholders of the acquired company are stockholderes of the surviving corporation after the merger. See 13A B. Fox & E. Fox, supra, § 23.02 [2], p. 23-10.
 

 Section 33-369 (c) provides that the surviving corporation in a merger shall be deemed to take and to have transferred to and vested in it, all property and debts of the merged corporations. See 13A B. Fox & E. Fox, supra, § 24.02 [7] [d], p. 24-18.
 

 “There are two competing analyses to be considered: the formalistic and the functional.”
 
 Thermatool Corp.
 
 
 *385
 
 v.
 
 Dept. of Revenue Services,
 
 43 Conn. Sup. 260, 266, 651 A.2d 763 (1994). The commissioner advocates the formalistic “entity” theory. The commissioner states in his brief that he has “always maintained that only the corporation, i.e., the entity which incurred the loss is entitled to deduct it from its income. If the surviving corporation (entity) of a merger is a different corporation (entity) from the corporation which sustained the operating loss, there is no deduction allowed. If the surviving coiporation (entity) of a merger is the same corporation (entity) which sustained the operating loss, then a deduction is allowed. This is the ‘entity theory.’ ”
 

 The plaintiff advocates the functional “continuity of business” theoiy. The court agrees with the well reasoned analysis in
 
 Thermatool Corp.
 
 that the functional approach should be favored over the formalistic approach. Id., 266-77 (review of history of formalistic versus functional approaches). From the facts in the present case, the court concludes that, while technically three distinct legal entities, the Grade A Market stores were a unitary family business. The court must decide whether three corporations, which have been found to function as a single entity while maintaining formalistic corporate structures, can be considered one corporation under the continuity of business concept.
 

 In order to meet the continuity of business test, the plaintiff, Grade A Market, Inc., has the burden of proving that the same group of assets that comprised Grade A Market of Newfield, Inc., and Grade A Market of Darien, Inc., are the same group of assets continuing the same business in the survivor corporation. This is so since “[d] eductions and exemptions from otherwise taxable income are a matter of legislative grace and are thus strictly construed.” (Internal quotation marks omitted.)
 
 B.F. Goodrich Co.
 
 v.
 
 Dubno,
 
 supra, 196 Conn. 8-9; see
 
 Yaeger
 
 v.
 
 Dubno,
 
 188 Conn. 206, 212, 449 A.2d 144 (1982).
 

 
 *386
 
 The continuity of business concept was expressed in
 
 Libson Shops, Inc.
 
 In
 
 Libson Shops, Inc.,
 
 the government contended that “the prior year’s loss can be offset against the current year’s income only to the extent that this income is derived from the operation of substantially the same business which produced the loss.”
 
 Libson Shops, Inc.
 
 v.
 
 Koehler,
 
 supra, 353 U.S. 386. The court in
 
 Libson Shops, Inc.,
 
 agreed with the government that it must be the same business that incurred the losses before it can offset the losses against income. Id., 390.
 
 Libson Shops, Inc.
 
 was a case where sixteen corporations, owned and operated separately, merged into one corporation. Following the decision in
 
 Libson Shops, Inc.,
 
 Congress enacted §§381 and 382 of the Internal Revenue Code expressly permitting a loss carryover to be used by a surviving corporation following a merger. No such change occurred in Connecticut specifically authorizing a surviving corporation following a merger to use a loss carryover of the premerged corporation. Connecticut is not obligated to following federal tax legislation if it chooses not to do so.
 
 First Federal Savings & Loan Assn.
 
 v.
 
 Connelly,
 
 142 Conn. 483, 490, 115 A.2d 455 (1955), dismissed, 350 U.S. 927, 76 S. Ct. 305, 100 L. Ed. 811 (1956).
 

 A number of states have struggled with the entity theory versus the continuity of business theory. Those states without statutes permitting a surviving corporation to use carryover losses of a premerged corporation allow the carryover losses of a premerged corporation to be used by the surviving corporation where the income producing business has not been altered, enlarged or materially affected by the merger.
 
 Bracy Development Co.
 
 v.
 
 Milam,
 
 252 Ark. 268, 277, 478 S.W.2d 765 (1972);
 
 Chilivis
 
 v.
 
 Studebaker Worthington, Inc.,
 
 137 Ga. App. 337, 342-43, 223 S.E.2d 747 (1976);
 
 Good Will Distributors (Northern), Inc.
 
 v.
 
 Currie,
 
 251 N.C. 120, 126, 110 S.E.2d 880 (1959);
 
 Holly Farms Poultry
 
 
 *387
 

 Industries, Inc.
 
 v.
 
 Clayton,
 
 9 N.C. App. 345, 350, 176 S.E.2d 367 (1970).
 

 In
 
 Good Will Distributors (Northern), Inc.,
 
 decided shortly after
 
 Libson Shops, Inc.
 
 the North Carolina Supreme Court seized upon the language in
 
 Libson Shops, Inc.,
 
 that there was a lack of “continuity of business enterprise.” The court in
 
 Good Will Distributors (Northern), Inc.,
 
 stated that “continuity of business enterprise” has a definite and well defined meaning.
 
 Good Will Distributors (Northern), Inc.
 
 v.
 
 Currie,
 
 supra, 251 N.C. 126. “There is a continuity of business enterprise when the income producing business has not been altered, enlarged or materially affected
 
 by the
 
 merger.” (Emphasis in original.) Id. In
 
 Good Will Distributors (Northern), Inc.,
 
 two corporations merged into a third corporation. These three corporations were in the same business of distributing books and bibles but operated in different territories. The reason that the
 
 Good Will Distributors (Northern), Inc.,
 
 court found no continuity of business enterprise in that case, however, was that the surviving corporation emerged as a new and more intensive business than existed before. Id., 127. The surviving corporation in
 
 Good Will Distributors (Northern), Inc.,
 
 had been altered, enlarged and was materially affected by the merger. In contrast to
 
 Good Will Distributors (Northern), Inc.,
 
 Grade A Market, Inc., did not emerge as an altered or enlarged business, although it technically encompassed three supermarkets rather than one. Nothing really changed in the way the three Grade A stores operated other than the form of the corporate structure.
 

 Following in the path of
 
 Good Will Distributors (Northern), Inc.,
 
 the court in
 
 Holly Farms Poultry Industries, Inc.,
 
 considered the merger of two poultry firms into Holly Farms, a feed manufacturing firm, which then sought to use the carryover losses of the
 
 *388
 
 two premerged corporations. After the merger, Holly Farms had an increase of more than 50 percent in net worth and had added both a “feed out” operation and experimental farm to its feed manufacturing business, so that its income producing business was substantially enlarged and materially affected.
 
 Holly Farms Poultry Industries, Inc.
 
 v.
 
 Clayton,
 
 supra, 9 N.C. App. 351. On this basis, the court in
 
 Holly Farms Poultry Industries, Inc.,
 
 found that there was no continuity of business enterprise. Id. Contrast again the 50 percent increase in net worth of Holly Farms and the addition of new kinds of operations with Grade A Market, Inc., which had no change in net worth, and no change in the nature of its business.
 

 In
 
 Bracy Development Co.
 
 v.
 
 Milan,
 
 supra, 252 Ark. 268, the Arkansas court found that the emerging corporation in a statutory merger of the two corporations had not been enlarged, altered or materially affected by the merger and thus constituted a continuity of business enterprise, so that carryover losses could be used by the surviving corporation. The court in
 
 Bracy Development Co.
 
 noted that the two merging corporations had “all the earmarks of ‘family’ corporations with common stock ownerships prior to the merger.” Id., 279.
 

 The “continuity of business test” in a corporate merger requires that in order to offset premerger losses against postmerger gains, the losses of the premerged corporation must be from the same business as the postmerged corporation that is now operating at a profit.
 
 State Tax Commission
 
 v.
 
 Oliver’s Laundry & Dry Cleaning Co.,
 
 19 Ariz. App. 442, 447, 508 P.2d 107 (1973). The reason for this ruling is to prevent trafficking in losses wherein a corporation with a loss merges with a profitable corporation solely to take advantage of the loss. Id., 446-47.
 

 The court in
 
 Chilivis
 
 v.
 
 Studebaker Worthington, Inc.,
 
 supra, 137 Ga. App. 340-41, recognized the struggle
 
 *389
 
 existing on the federal and state level to determine under what circumstances a profitable corporation will be allowed to absorb the loss of another corporation. The
 
 Chilivis
 
 court considered three factors to be the basis of determining the deductibility of net operating losses of a premerged corporation: “(1) has the legal entity of the old corporation been preserved? (2) has the business enteiprise which produced the loss been continued? and (3) has there been no substantial change in the ownership?” Id., 342. The court found further that although the old Studebaker corporation was liquidated, it emerged later as a new coiporation with the same corporate identity; no substantial change in ownership had occurred and the business of the old corporation was carried on in the new at the same level. Id., 342-43. Because of this continuity of enterprise, the court in
 
 Chilivis
 
 concluded that the postmerged corporation was entitled to carryover and deduct the net operating losses of the premerged corporation. Id., 343.
 

 Although
 
 Chilivis
 
 recited the first of its three factors to be the preservation of the legal entity of the old corporation, in fact, the court in
 
 Chilivis
 
 considered the emergence of the new coiporation with the same corporate identity as the liquidated corporation to be in compliance with factor one.
 

 Four elements are considered that will give rise to a continuity of business enterprise between a merged corporation and a surviving corporation sufficient to support the deduction of a loss carryover. Three of the four elements were recited in
 
 Chilivis.
 
 These elements are: (1) has the surviving corporation retained the same corporate identity of the premerged corporation, (2) has the business enteiprise which produced the loss been continued in the surviving corporation, and (3) has there been any substantial change in the ownership of the surviving corporation. Id., 342.
 

 
 *390
 
 A fourth element consistent with
 
 Good Will Distributors (Northern), Inc., Holly Farms Poultry Industries, Inc.,
 
 and
 
 Bracy Development Co.,
 
 is that the income producing business of the surviving corporation not be altered, enlarged or materially affected by the merger.
 

 The facts applicable to Grade A Market, Inc., meet these four elements. Grade A Market of Darien, Inc. and Grade A Market of Newfield, Inc., continued their same identity in Grade A Market, Inc., the surviving corporation. The business enterprise that produced the loss continued in the surviving corporation. As it has been previously stated, the three supermarkets continued to operate after the merger as they did prior to the merger. The plaintiff in its brief aptly described the merger: “In this case, the officers, directors, shareholders, assets, liabilities, employees, management, operations, accounting procedures, business practices, vendors, customers, business enterprises, business location, payroll and checking accounts continued on as if there was no merger. A mere paper reorganization occurred unbeknownst to the public, employees, customers and vendors of the plaintiff.” Except for the formalistic and legalistic change, the business continued as it had in the past. There has been no change in the ownership of the surviving corporation from the court’s previous findings of the facts. The court further concludes that Grade A Market, Inc., the surviving corporation, has not been altered, enlarged or materially affected by the merger.
 

 It is clear that there was a continuity of business enterprise in the present case. The taxpayer that produced the income was the same taxpayer that incurred the loss. As in
 
 Thermatool Corp.,
 
 “[i]ts employees did not change, apart from normal turnover. Its clientele did not change, and its business did not change. Employees and customers dealing with the business would not have noticed the difference. ... In addition, the ultimate owner of the business . . . remained constant.”
 
 Thermatool Corp.
 
 v.
 
 Dept. of Revenue Services,
 
 
 *391
 
 supra, 43 Conn. Sup. 263. The present case is to be distinguished from
 
 Golf Digest/Tennis, Inc.
 
 v.
 
 Dubno,
 
 supra, 203 Conn. 455, solely on the facts in each case.
 
 Golf Digest/Tennis, Inc.
 
 was a case where two separate and distinct Illinois corporations, Golf Digest, Inc. and Tennis Features, Inc., were consolidated into a Delaware corporation, Golf Digest/Tennis, Inc. The Grade A Markets did not operate functionally as separate corporations. Except for the formalistic corporation structure, Grade A Markets were the same family business before and after the merger. In the final analysis, whether there was one or three coiporations in the present case, there was only one taxpayer.
 

 The court concludes that Grade A Market, Inc., can deduct the premerger operating loss carryover of Grade A Market of Darien, Inc. and of Grade A Market of Newfield, Inc.
 

 The plaintiffs appeal is sustained. Judgment may enter in accordance with this decision.
 

 [1]
 

 See
 
 Thermatool Corp.
 
 v.
 
 Dept. of Revenue Services,
 
 43 Conn. Sup. 260, 651 A.2d 763 (1994).